465 So.2d 167 (1985)
Betty M. DOYLE (Monroe), Plaintiff-Appellant,
v.
Rickey L. DOYLE, Defendant-Appellee.
No. 84-207.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
Writ Denied May 3, 1985.
Ford & Nugent, Howard N. Nugent, Jr., Alexandria, for plaintiff-appellant.
James Buck, Alexandria, for defendant-appellee.
Before GUIDRY, FORET and STOKER, JJ.
*168 GUIDRY, Judge.
This is an appeal by Betty M. Doyle (now Monroe), the mother, from a judgment on a custody rule filed by Rickey L. Doyle, the father. The judgment terminated a prior order of sole custody to the mother and granted the father's request for joint custody of Stacy Doyle, the nine year old child of the marriage.
The trial judge, in his written reasons for judgment, has fairly set forth the facts surrounding the instant controversy, which we adopt as our own:
"The general facts are that the parties were married in 1972 and the child at issue was born September 2, 1974. They lived together in Rapides Parish, Louisiana until they separated in September of 1979. They were divorced by judgment dated January 14, 1981 in which the mother received sole custody of the child subject to reasonable visitation rights by the father, and the father was ordered to pay $150.00 per month child support. After the divorce, they attempted a reconciliation and actually lived together in Rapides Parish until April 1982, at which time they again separated. Shortly thereafter the mother married George Monroe, and she and Stacy moved to the state of New York to live with him.
In May of 1982, the father, Rickey L. Doyle, filed a rule against the mother, Betty Monroe, seeking sole custody. That rule was heard during June 1982, and the father's request for sole custody was rejected.
The present rule by the father for sole custody, or in the alternative joint custody or specific visitation rights, was filed on July 5, 1983, which was after LSA-C.C. Article 146 was amended effective January 1, 1983 to provide for joint custody, and amended again by the regular session of the legislature during 1983. Under these amendments, there is a rebuttable presumption that joint custody is in the best interest of a minor child. The act lists a number of factors which may be considered in determining whether the presumption has been rebutted.
The facts show that Mr. Doyle has not seen his child since before the mother moved to live with her new husband, George Monroe, in the northeastern part of the United States during August 1982. Plaintiff testified that actually he had not seen the child for nineteen months. The evidence shows that at one time during this period the mother offered to let the father visit the child by traveling from Louisiana to New York and visiting within the confines of the yard of the Monroe's residence. The mother testified she was afraid to let the father take the child beyond the residential premises because he may have kidnapped the child and taken it back to Louisiana. The father did not accept the offer to visit the child at the Monroe residence in New York. He testified he has a fear of flying, and that he was afraid the mother would have him arrested. The father's contact with the child has been limited to a few telephone conversations, all of which he says were actually monitored by the mother.
As to the present circumstances of the child in Elmira, New York, the evidence shows that defendant's new husband is retired from the Navy but now works as a photographer,[1] that they live in a comfortable home and are fit and capable of providing a stable and loving environment for the child.
As to the father's present circumstances, the evidence shows that he has remarried, and although he is presently unemployed he could with the help of his present wife and his parents provide adequate and suitable environment for the child during any periods of physical custody or visitation awarded to him.
Another fact developed by the evidence is that both the father's parents and the mother's parents still live in Rapides Parish, *169 Louisiana, and, of course, these grandparents of the child would like very much to see her as often as possible."
Following the hearing on the rule, the trial judge indicated to the parties that he was considering a judgment of joint custody. He requested that each party submit plans for the implementation of the joint custody of Stacy. Only Mr. Doyle submitted a requested plan. By judgment dated December 21, 1983, the trial judge ultimately decided upon the following joint custody plan:
"1.
The mother shall have physical custody of the child during the school year which is defined for purposes of this plan as beginning on August 15, and ending on June 15, with the father having the right of visitation during special holidays as set forth hereinafter;
2.
The father shall have the right to physical custody from June 15 to August 15 of each year. Grantparental (sic) visitation from the paternal side will be enjoyed during the residence with the father by private arrangements. As to the maternal grandparents, the father will transport the child earlier than June 15 or later than August 15 to accomodate (sic) the maternal grandparents with time arranged for them from the mother. Additionally, during residence with the father, the child will be available for at least three (3) daytime outings with the maternal grantparents (sic) to be arranged, but excluding the Fourth of July Holiday;
3.
Visitation during the major holidays of Thanksgiving, Christmas and Easter (Spring Break), will be alternated between the father and the mother, the holidays to include all time off from school with pick-up the day after school adjourns and returned the day before school begins again, the alternation of these holidays between the father and the mother to begin with the father having Thanksgiving holiday during the year 1983;
4.
Due to the distance and the cost involved, the father and the mother shall share equally the costs of transporting and chaperoning the child back and forth for periods of physical custody and visitation;
5.
The parent having the child during the period of physical custody or visitation shall have the sole responsibility for meeting any medical or dental emergency to the child without the necessity of securing the consent of the other parent;
6.
The father shall continue to pay to the mother for child support the sum of $150.00 per month, as previously ordered by this Court, except that during the two months from June 15 to August 15, the father will not have to pay these amounts;
7.
Both the father and the mother will facilitate telephone calls by the child with the other parent during those times when the child is with either parents (sic), within the hours of 9:00 o'clock a.m. to 9:00 o'clock p.m.;
8.
Each parent shall keep the other reasonably informed as to records and information regarding the child concerning medical, dental, school, religious, camps, clubs, cultural or extracurricular activities, hobbies and interests and clothing....."
On appeal, Mrs. Monroe raises the following issues:
1. Whether the trial court erred in changing the custody of Stacy Doyle *170 from sole custody of the mother to joint custody; and,
2. Whether the trial court erred in making the parents equally share the costs of transporting and chaperoning the child back and forth for periods of physical custody and visitation.

JOINT CUSTODY
The law applicable to this controversy is La.C.C. Art. 146, as amended by Act 695 of 1983 (effective August 30, 1983) and Art. 157, as amended by Act 307 of 1982 (effective January 1, 1983).
The sole criterion in determining when a change of custody is appropriate is the best interest of the child. Johnston v. McCullough, 410 So.2d 1105 (La.1982); Turner v. Turner, 455 So.2d 1374 (La. 1984). La.C.C. Art. 146(C) establishes a rebuttable presumption that joint custody is in the best interest of a minor child. This presumption is properly rebutted by a showing that a different arrangement is in the child's best interest.
In Turner, supra, the Supreme Court clarified the joint custody presumption of Article 146. The Supreme Court explained that:
"As in any matter in which there is a rebuttable presumption, the burden rests with the party challenging the presumption to convince the fact-finder that his proposed conclusion is more correct than the presumed one. A presumption does not have any probative value, but merely provides the fact-finder with a conclusion in the absence of proof to the contrary. See 9 J. Wigmore, Evidence § 2491(3) (3d ed.). `Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear.' Lincoln v. French [15 Otto 614], 105 U.S. 614, 617 [26 L.Ed. 1189] (1881).
The article 146 presumption only compels the judge to award joint custody in those cases where other things are equal; or where there is insufficient evidence to rebut the presumption; or whenever neither parent alone would be able to manage a sole custody arrangement, and where it cannot be shown that it would be detrimental to the child to remain in parental custody. Effectively, the presumption only provides the judge with a first choice, which choice must be rejected in the face of evidence which tends to disprove the conclusion. In such a case, it becomes necessary for the other party to reestablish the propriety of the presumption's conclusion."
La.C.C. Art. 146(C)(2) sets forth a number of factors which are to be considered in determining whether the presumption in favor of joint custody has been sufficiently rebutted. We therefore must consider these factors in light of the circumstances of the instant case in order to determine whether the appellant, Mrs. Monroe, has sufficiently rebutted the presumption in favor of joint custody.
We note here that the trial court's determination as to the child's best interest is entitled to great weight and will not be disturbed unless it is shown to be clearly erroneous. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (La.1971); Parrish v. Parrish, 448 So.2d 804 (La.App. 2d Cir.1984).
Appellant contends that the presumption in favor of joint custody has been rebutted based upon factors (d) and (k) of La.C.C. Art. 146(C)(2). Appellant claims that it would not be in Stacy's best interest to be uprooted from the stable and loving environment which she and Mr. Monroe have provided for her since their marriage in April of 1982. La.C.C. Art. 146(C)(2)(d). Appellant further asserts that the great distance between the homes of the parents also mitigates against a finding of joint custody. La.C.C. Art. 146(C)(2)(k). Appellant relies upon the case of Lachney v. Lachney, 446 So.2d 923 (La.App. 3rd Cir. 1984), writ denied, 450 So.2d 964 (La.1984), in support of these contentions.
In Lachney, this court affirmed the trial court's refusal to award joint custody to the parents, finding that such award would not be in the best interest of the minor *171 child involved. Although factually similar, Lachney can be distinguished from the instant case. Following the Lachney's separation in 1978, custody of their minor daughter, Tammy, had alternated back and forth from the mother to the father on five separate occasions. Mr. Lachney was ultimately granted sole custody of his daughter in the judgment of divorce rendered in 1980. As of that time, Tammy had resided in Louisiana all of her life. Two years after the divorce, Mrs. Lachney remarried and moved to South Carolina. The year following her move, Mrs. Lachney filed for the joint custody of Tammy. Under the joint custody implementation plan submitted by Mrs. Lachney, Tammy was to spend the school year in South Carolina with her mother and her summer vacations in Louisiana with her father. The trial court held, and we agreed, that such joint custody arrangement would not serve Tammy's best interest. Two factors were considered in reaching this conclusion. First, we considered the distance involved between the two homes. More importantly, we found that the specific plan of implementation would "effectively remove Tammy from the stable and loving environment to which she has grown accustomed. Due to the distance between the homes of her parents, she would lose contact with her present friends and schoolmates for roughly nine months out of each year."
In the present case, we have the exact opposite situation. Stacy was uprooted from her friends, father and grandparents when her mother and Mr. Monroe decided to move to New York. Stacy spent all of her life in the Alexandria-Pineville area of Louisiana prior to her move in 1982. Since Mrs. Monroe moved out of the home that she and Stacy shared with Mr. Doyle in April of 1982, Stacy has lived in four different homes and has attended as many different schools. The stability of environment which is described in Art. 146(C)(2)(d) and which was the basis of our decision in Lachney has not yet been achieved for Stacy by the Monroes. Her stable and loving environment was taken away from her when she was removed from her friends and family in Louisiana. Of course, we observe that the Monroes are willing and capable of providing a stable and loving home for Stacy, but as of the time of the hearing, such could not serve as the basis for denying Stacy the opportunity to maintain her emotional ties in Louisiana.
Under the plan submitted in the present case, Stacy will remain in her accustomed environment in Rhode Island for ten months out of the year. The remaining two months of the year will be spent in Louisiana where Stacy will be given the opportunity of receiving love and nurturing from her father and his new wife, from both her paternal and maternal grandparents, and from the friends whom she had made during the first eight years of her life. In this respect, Stacy will be able to benefit from the continuity of the stable and satisfactory atmosphere which the Monroes will provide for her in Rhode Island without having to sever all ties with the wholesome and loving environment in which she spent her first eight years.
Turning to the distance argument, we note that the distance between the parties is but one factor to be considered when examining the totality of the facts, circumstances, and relationships presented by a particular case in an attempt to reach a decision concerning the child's best interest. Considering the specific plan of implementation in the present case, we find that the sole consideration of distance is not sufficient to rebut the presumption in favor of joint custody.
Under the present plan, the maximum number of trips that Stacy would possibly make to Louisiana in one year would be three; once for the summer vacation and twice for the alternating holidays. Every other year, Stacy would only travel to Louisiana twice, due to the fact that the three major holidays are alternated between the parents. We find that this amount of travel would not be detrimental to Stacy, especially considering the benefits which she would derive from these trips. Under this joint custody plan, Stacy is allowed to have *172 the continuing, regular relationship with both of her parents as was envisioned with the adoption of joint custody in Louisiana. Every child is entitled to the love, nurture, advice and training of both father and mother, whenever feasible. To deny a child her rights to the benefits of joint custody solely because the parents live in two distant states would, in effect, permit one parent to unilaterally cut off the other parent from his child by simply moving to a sufficiently distant state.
With regard to the remaining factors delineated in La.C.C. Art. 146(C)(2), the record reveals no evidence to rebut the presumption in favor of joint custody. We therefore find that the joint custody arrangement in the present case is in the best interest of Stacy, and that the trial court's judgment granting joint custody was correct.

TRANSPORTATION COSTS
Appellant contends that the trial court erred in ordering her and Mr. Doyle to equally share the costs of transporting and chaperoning Stacy back and forth for periods of physical custody and visitation. We find no abuse of the trial court's discretion in requiring the parents to share the transportation costs involved in implementing the joint custody award in the present case. Mothers and fathers have a mutual obligation of supporting, maintaining and educating their children. La.C.C. Art. 227.
For the reasons assigned, the judgment appealed from is affirmed. Costs are assessed against the appellant.
AFFIRMED.
NOTES
[1] At the time of the hearing, October 17, 1983, Mr. and Mrs. Monroe and Stacy had moved from Elmira, New York to Newport, Rhode Island where Mr. Monroe had re-enlisted in the Navy.