YELVERTON, Judge.
Lawanna H. Melton appeals a judgment changing her sole custody of her two children to an award of joint custody. She contests both the joint custody award itself, and the plan it ordered implemented. Finding no abuse of the trial court’s discretion, we affirm.
Married in 1971 and divorced in 1983, Andrew T. Melton and Lawanna H. Melton had two children, Shelley, born in 1977, and Alex, born in 1982. An Oklahoma court at the divorce awarded sole custody of the children to Lawanna, with Andrew having visitation rights agreed to by both parties. Shortly after the 1983 divorce Lawanna and the children moved to Alexandria, Louisiana, so she could take a job there.
It soon became apparent that the distance between Tulsa, Oklahoma and Alexandria made regular exercise of Andrew’s every-other-weekend visitation rights impracticable. These visitations became infrequent and sometimes unexpected. Problems resulted. Andrew thought the solution to these and other problems might lie in a joint custody plan, giving him more physical custody time in the summers, and so in 1984, he filed a suit for joint custody, submitted a plan, and the case was tried.
Joint custody was awarded, and the plan which Andrew submitted was substantially adopted and ordered implemented. It is this judgment which is now on appeal.
The allocation of the time periods each parent was to have physical custody, gave the children to Lawanna in Alexandria during the school year from August to May, except that during that time Andrew would have physical custody on alternate weekends from Friday 6:00 p.m. until Sunday 6:00 p.m. Andrew was required to notify Lawanna at least five days in advance whenever he wished to exercise a weekend custody. Provision was made for the major holidays. During the summers, Andrew was to have physical custody for the last three full weeks of June, and the first *281 15 days of August. Rounding out the physical custody provisions, Lawanna was to have one weekend during the last three full weeks of June, on proper notice.
The judgment also made provisions for the privileges and responsibilities of the parents, making each obligated to exchange information concerning the health, education and welfare of the children, and requiring that they confer with one another in the exercise of decision making rights and responsibilities, and giving each party the right to inspect and receive school and medical records. Each was required to give the other free access to the children for the purpose of communicating with them.
The allocation of physical custody times in the joint custody judgment gave Andrew only three weeks more per year than he had enjoyed under the old visitation scheme, but it was less than what he wanted, because he wanted two continuous months each summer. During the trial of the rule for joint custody, Andrew admitted that he did not expect to be able to exercise alternate weekend physical custody rights any more than he had in the past.
Much of the trial of the rule was taken up disputing the summer custody scheme. Lawanna called a psychologist, Dr. Milton Rhea, whose opinion was opposed to a two month summer period away from the mother. Dr. Rhea believed that with children as young as the ones involved here, ages seven and two at the time of the hearing, even three weeks was too long a time to be away from their primary domicile with their mother. The trial judge considered this expert testimony. He was impressed with the qualities of both parents. It was his decision that the best interests of the children would be served by allocating five weeks to Andrew each summer, split into a two week and a three week session.
Although Lawanna on this appeal makes no specific assignments of error, her arguments in brief set forth two issues: (1) whether the distance between the residences of the parties is enough to rebut the presumption in favor of joint custody, and (2) whether the Louisiana judgment of joint custody is so like the Oklahoma judgment giving her sole custody and Andrew visitation, that it really does not amount to joint custody at all. We now discuss these issues.
THE DISTANCE FACTOR
The legislatively preferred permanent custody arrangement in all cases of separation and divorce, and change of custody after an original award, is to both parents jointly. C.C. arts. 146 and 147. The court is required to devise a plan of implementation of joint custody which will generally accomplish two objectives: the allocation of the time periods each parent shall enjoy physical custody of the children, and the legal authority, privileges and responsibilities of the parents. C.C. art. 146(A)(1). The paramount factor in granting custody is the best interest of the children, but there is a rebuttable presumption that joint custody is in their best interest. C.C. art. 146(A) and (C). The presumption is rebutted by a showing that it is not in the best interest of the children, after consideration of evidence with respect to all of the factors enumerated in C.C. art. 146(C)(2). This list includes the distance between the residences of the parties. C.C. art. 146(C)(2)(k).
The burden of proof that joint custody would not be in a child’s best interest is upon the parent requesting sole custody. La. C.C. art. 146(A)(2). Lawanna offered no evidence tending to show that joint custody itself would not be in the children’s best interest. Her evidence primarily disputed any extended length of time away from her.
The primary consideration in this case which tends to rebut the presumption in favor of joint custody is the distance between the respective residences of the parties, La. C.C. art. 146(C)(2)(k). This court has had the occasion to consider the distance factor in joint custody cases before. See Lachney v. Lachney, 446 So.2d 923 (La.App. 3rd Cir.1984), writ denied 450 So.2d 964 (La.1984); Bishop v. Bishop, 457 So.2d 264 So.2d 264 (La.App. 3rd Cir.1984), *282 writ denied 460 So.2d 1048 (La.1984); and Doyle v. Doyle, 465 So.2d 167 (La.App. 3rd Cir.1985), writ denied, 467 So.2d 1136 (La.1985). As was said by the Doyle court, supra, “the distance between the parties is but one factor to be considered when examining the totality of the facts, circumstances, and relationships presented by a particular case ...”
A dominant concern demonstrated in these “distance” cases is that the children should not be shuttled back and forth between the parents. Under the plan of implementation before us, Andrew gets physical custody of the children twice yearly, once every other Easter or Thanksgiving and then a part of every Christmas. He also has the children twice during the summer vacation for a total of five weeks. This amounts to four times every year that the children will go to Oklahoma or elsewhere with their father and his wife. The split summer plan was a compromise of sorts as both Lawanna and Dr. Rhea felt that the children were too young for the two month summer plan originally submitted by Andrew. Andrew desired some substantial time during the summer so that he and his present wife could plan their vacations to coincide with the visit of the children.
The alternating weekends present an unusual problem, because distance actually prevents the full implementation of this part of the physical custody scheme. However, this is something that was reckoned with from the beginning. Andrew stated that he merely wanted the privilege so that he could take advantage of it when he is able. As earlier experienced, on several occasions Andrew was in this State on business and was denied visitation for various reasons. Furthermore, Lawanna testified that she had no objection to the alternating weekend scheme.
Examining the totality of the facts, circumstances and relationships presented by this case, we believe that the sole consideration of distance is not sufficient to rebut the presumption in favor of joint custody.
VISITATION BY ANOTHER NAME
Lawanna also contends that while the judgment below purports to grant joint custody, the substance of the physical custody arrangement amounts to sole custody in her with visitation privileges, and she asks that it be called that. What this argument overlooks is that the judgment does more than provide an allocation of physical custody time periods. It also makes provision for a sharing of the legal authority, privileges and responsibilities of the parents.
We are also influenced by the precept that joint custody does not necessarily mean a 50-50 sharing of time. Besides physical access, joint custody allows both parents participation in decisions affecting the children’s lives. Doucet v. Doucet, 465 So.2d 175 (La.App. 3rd Cir.1985); Plemer v. Plemer, 436 So.2d 1348 (La.App. 4th Cir.1983); Carroway v. Carroway, 441 So.2d 494 (La.App. 2nd Cir.1983). As we stated in Doyle, supra, at p. 172:
“Every child is entitled to the love, nurture, advice and training of both father and mother, whenever feasible. To deny a child her rights to the benefits of joint custody solely because the parents live in two distant states would, in effect, permit one parent to unilaterally cut off the other parent from his child by simply moving to a sufficiently distant state.”
The standard of review in custody cases requires us to give the trial court decision great weight, and to overturn it only when there is a clear abuse of discretion. Doucet v. Doucet, supra. Finding no clear abuse of discretion, we affirm.
AFFIRMED.