428 So.2d 1114 (1983)
Keith M. WHIPPLE
v.
Diana SMITH.
No. 82 CA 0448.
Court of Appeal of Louisiana, First Circuit.
February 22, 1983.
Writ Denied April 15, 1983.
*1115 Ernest A. Kelly, Houma, for plaintiff and appellee.
Alan C. Fishbein, Baton Rouge, for defendant and appellant.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
On November 16,1981, Keith M. Whipple (plaintiff) filed a suit for divorce against his wife, Diana Smith (defendant) on the grounds of living separate and apart for one year. Plaintiff alleged that the parties had been separated in fact since November of 1980. In response to this petition, defendant filed exceptions of prematurity and no right of action, alleging that the parties had not lived separate and apart for one year. Defendant specifically alleged that the parties had lived together as man and wife until May 25, 1982. The trial court denied these exceptions.
On March 16, 1982, defendant filed a motion to compel delivery of separate property. In opposition, plaintiff filed on April 2, 1982, an exception of unauthorized use of summary process. On April 5,1982, after a trial on the merits, the trial court granted plaintiff a divorce based on living separate and apart for one year; awarded defendant permanent alimony of $1,000.00 per month for a period of four months, subject to a credit of $3,000.00 for gold coins which defendant had in her possession; ordered defendant to pay court costs, which included an expert witness fee for a vocational consultant who testified at trial against defendant; and sustained the exception of unauthorized use of summary process.
The record reveals that the matrimonial domicile was in Bourg, Louisiana. The residence in Bourg is plaintiff's separate property, as it was acquired by him prior to the marriage. Plaintiff testified that he left defendant in November of 1980. Although contending that she and plaintiff lived together as man and wife until May of 1981, defendant admitted that plaintiff maintained an apartment in Houma where he regularly spent the night between October or November of 1980 and May of 1981. Defendant knew that plaintiff was living with another woman in the apartment. However, defendant continued to live at the Bourg residence until May of 1981.
Plaintiff testified that he maintained a separate apartment in Houma, Louisiana, from November of 1980, which he equipped with towels, linens, pots and pans, etc. Plaintiff's testimony was corroborated by Ricky Whipple, his son by a prior marriage, who testified that he purchased items for his father's apartment and brought groceries to the apartment. Ricky said that in *1116 November of 1980, he removed his father's clothes from the residence in Bourg and brought them to his father's law office at his father's request. Both Amy Elizabeth Whipple, plaintiff's daughter by a prior marriage, and Ricky Whipple testified that they contacted their father either at his office or at his apartment between November of 1980 and May of 1981. Plaintiff continued to live in the apartment until defendant left Bourg.
The property at Bourg consists of a house and ten acres, where plaintiff maintained a garden of corn and peas. His mother had a separate apartment and lived within the Bourg residence. Plaintiff admits that between November of 1980 (when he moved to an apartment) and May of 1981 (when defendant left the Bourg residence), he returned and on several occasions spent the night and had sexual relations with defendant. However, plaintiff testified that he went to his house either to see his mother or to take care of his garden or for various other reasons. He stated that he never intended to reconcile with defendant or to live with her again.
Ricky Whipple continued to reside in the Bourg residence along with his grandmother, Lola Whipple, after plaintiff left. He testified that plaintiff would come to visit with his mother or work in his garden; he admitted that on two or three occasions plaintiff spent the night with defendant.
Plaintiff's mother testified that plaintiff stopped coming home before Thanksgiving of 1980 and did not visit very often thereafter. Her testimony was corroborated by Vanessa Guidry, with whom plaintiff was living in his Houma apartment. She testified that except for about three occasions, plaintiff spent the night at his apartment from November of 1980 until he moved back to Bourg. She also stated that between November of 1980 and May of 1981, plaintiff went out in public places with women other than defendant.
Defendant testified that plaintiff came home on several occasions and they had sexual relations. However, defendant stated that she was aware of the fact that plaintiff was living with another woman in an apartment. Defendant further testified that she and plaintiff went to Mardi Gras parties and other social events together. However, on at least one of these occasions, she later stated, they went in separate vehicles and did not leave together.
Defendant says that the trial court erred: (1) in granting a divorce based on one year living separate and apart, (2) in ordering defendant to sell assets which were under an injunction from a different court in a different parish, (3) in granting permanent alimony in the amount of $1,000.00 per month for a period of four months, subject to a credit of $3,000.00 (because defendant had in her possession $3,000.00 worth of gold) without first determining the classification of the gold, (4) in awarding an expert fee to Stephanie Chalfin to be paid by defendant, and (5) in sustaining an exception of improper use of summary process.
Louisiana Revised Statute 9:301 provides:
"When the spouses have been living separate and apart continuously for a period of one year or more, either spouse may sue for and obtain a judgment of absolute divorce."
Thus, in order for a court to properly grant a decree of divorce based on the parties living separate and apart, a finding must be made that the parties have not reconciled during the requisite period of time. Our jurisprudence formerly regarded a single act of voluntary sexual intercourse between separated spouses as tantamount to a reconciliation, thus ending the period of time they legally lived separate and apart. However, recent jurisprudence has deviated from the strictness of prior jurisprudence and has evolved the rule that reconciliation,
"... is a matter of mutual intent, to be judicially determined in the light of the totality of circumstances of each particular case and that isolated acts of sexual intercourse between the spouses is (sic) not controlling but merely one of the factors to be considered." Halverson v. Halverson, 365 So.2d 600 at 602 (La.App. 1st Cir.1978)
*1117 The crucial question in this case thus becomes at what point in time did the separation in fact occur, or more precisely, were the parties separated between November of 1980 and May of 1981. The trial judge in oral reasons for judgment stated:
"The Court concedes that there is testimony that the parties did meet occasionally and during some of these meetings, which were brief in nature, that they did indulge in sexual relations. But the Court ... is satisfied that there was no intent to reconcile on the part of Mr. Whipple or Mrs. Whipple, on those occasions. The Court finds it significant that Mr. Whipple maintained an apartment separate and apart from his matrimonial domicile during this entire period, and apparently, from the testimony of Mrs. Whipple, he was living with someone else at that address, contrary to the requirements of law that he not do so."
We, also, find it significant that plaintiff was living in an apartment with another woman. This conceded fact is strong evidence that plaintiff no longer intended to live with his wife. Although plaintiff returned to the matrimonial domicile on several occasions, the record reveals that he had reasons totally unrelated to defendant's presence at the domicile for returning. We thus find that the trial judge was not manifestly erroneous in finding that the totality of the circumstances indicated that the parties did not mutually intend to resume their marital relationship.
Defendant's second and third assignments of error involve virtually the same issue, i.e., whether or not the trial judge erred in ordering defendant to sell gold which she had in her possession, to use the proceeds to live on until she finished her refresher course and began working. While no specific finding was made as to whether the gold was separate or community property, the trial judge apparently treated it as defendant's separate property. The record reveals that defendant treated the gold as her separate property. Defendant stated that she no longer possessed all of the gold but only retained eleven pieces. Because nothing else in the record indicates that the gold was community property, we cannot say that the gold was under the injunction from another court which prohibited the alienation or encumbrance of community property. Defendant has not only failed to convince us that the gold was community property but has treated it as her separate property. Thus, we cannot say that the trial judge's order violated or modified the injunction or was erroneous in any way.
Louisiana Civil Code Article 160 provides for permanent alimony when the claimant spouse has not been at fault and does not have sufficient means for support. Article 160 specifically provides that in determining the entitlement and amount of alimony, the court shall consider many factors including the means and assets of the spouses. The assets of the claimant spouse cannot be ignored. Porche v. Porche, 372 So.2d 637 (La.App. 1st Cir.1979).[1] The trial judge felt that defendant's need for permanent alimony was reduced by the fact that she had certain liquid assets in the form of eleven ounces of gold (Krugerrands) readily available to her. The trial judge stated:
"So that brings it up to a total of $1,000 [per month], which is her basic needs. Now, with that $1,000 ... she has $3,000 available to her, and she could live at least three months with those basic needs, ..."
We do not feel that the trial judge erred in requiring a certain amount of asset depletion before defendant was entitled to permanent alimony.
Louisiana Revised Statute 13:3666 provides in pertinent part:
"The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment ..." [Emphasis added]
*1118 The trial court has great discretion in setting the amount of said expert witness fees. Prentice Oil & Gas Co. v. Caldwell, 355 So.2d 1327 (La.App. 1st Cir.1977), writ denied, 358 So.2d 640 (La.1978); Baghramain v. MFA Mutual Insurance Company, 315 So.2d 849 (La.App. 3rd Cir.1975), writ denied, 320 So.2d 207, 209 (La.1975). Stephanie Chalfin, a vocational consultant, testified on behalf of plaintiff. Her testimony was offered in an attempt to defeat defendant's claim for permanent alimony and to show that defendant could find employment as a beautician in the Baton Rouge area without a refresher course. The trial court did not err in awarding an expert fee of $300.00. However, we find that the fee was erroneously taxed to defendant. Although defendant was cast in judgment in the sense that a divorce was granted to plaintiff, defendant won on the alimony issue. The trial judge found that defendant needed to take a refresher course prior to returning to her previous employment as a beautician. Stephanie Chalfin's testimony was at least partially offered to negate defendant's professed need to take a refresher course. Because the expert testified on the very issue that defendant prevailed upon, we find that the trial judge erred in taxing the costs of the testimony to defendant.
Defendant's final assignment of error involves the trial judge's refusal to determine the ownership of a 1980 Mercedes Benz automobile in a summary proceeding. Defendant had attempted by rule to show cause to gain possession of the automobile. In Little v. Little, 371 So.2d 1194 (La.App. 1st Cir.1979), the plaintiff, by way of a motion to show cause, asked, among other things, that the defendant be ordered to return to her a set of china which she claimed was her separate property. The defendant objected by exception of unauthorized use of summary process, which was overruled. We reversed as to that ruling and said:
"Summary proceedings may be used over timely objection only in those cases expressly authorized by law. C.C.P. art. 2592; State Through Dept. of Highways v. Lamar Advertising Co. of La., Inc., 279 So.2d 671 (La.1973); Gary v. Brenholz, 120 La. 1028, 46 So. 12 (1908).
. . . . .
A partition of community property may be asked for as incidental relief in a suit for divorce (C.C.P. Art. 82), but it must be requested in the petition and handled in an ordinary proceeding. Thibodeaux v. Duos, 343 So.2d 441 (La.App. 3d Cir. 1977)." 371 So.2d at 1195, 1196.
Thus, the trial judge did not err in sustaining plaintiff's exception of unauthorized use of summary process.
The judgment of the trial court is affirmed, except for that portion which allocated costs. The judgment as to costs is reversed and plaintiff is cast for the expert witness fee of $300.00. All costs are taxed to plaintiff and defendant equally.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
WATKINS, J., concurs.
NOTES
[1] But see Super v. Super, 397 So.2d 1084 (La. App. 4th Cir.1981), writ denied, 399 So.2d 583 (La.1981), for the proposition that claimant spouse is not required to sell the home or to deplete assets entirely before said spouse is entitled to alimony.