568 So.2d 168 (1990)
Mary Cavender SCHELLDORF, Plaintiff-Appellee,
v.
David Warren SCHELLDORF, Defendant-Appellant.
No. 21706-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
*169 Sockrider, Bolin & Anglin by D. Rex Anglin, Shreveport, for defendant-appellant.
Stephen K. Hearn, Jr., Ruston, for plaintiff-appellee.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
SEXTON, Judge.
Defendant-appellant David Schelldorf appeals a district court judgment awarding *170 sole custody of their minor child to plaintiff-appellee Mary Schelldorf with only restricted visitation privileges for him. Additionally, he argues that the district court abused its discretion in awarding his ex-wife alimony pendente lite, in awarding more child support than is warranted under the circumstances, and in casting him for all costs of the district court proceeding. We affirm in part, reverse in part, amend in part, and remand for further proceedings.
The parties met when plaintiff moved to Sundance, Wyoming, to work as a registered nurse. Defendant is originally from Sundance and worked on his family ranch which is owned by a Subchapter S corporation. They met approximately two weeks after her arrival in Sundance and married some six months later.
When they first married, the parties lived in the rent house which the plaintiff occupied prior to their marriage. Several months later, however, they moved into one of the houses located on the ranch property.
A series of disagreements arose between the plaintiff and her father-in-law, variously involving her horses, her dog, her choice of religion, and an acceptable site on the ranch to build a home for the young couple. Although testimony by the parties seemed to attribute the resulting disagreements and personality conflicts to different factors and to lay the blame for those problems at different feet, it is undisputed that the plaintiff did not care for her in-laws and it would appear that the feelings were somewhat mutual.
Not long after marrying, the parties moved to Louisiana where the plaintiff was employed as a nurse at a hospital in Ruston and the defendant worked for local corporations, concluding with the Prescalite Manufacturing Company at an annual salary of approximately $25,000. On March 17, 1985, the parties had a daughter who was one month shy of three years old at the time of her father's departure on February 23, 1988.
The evidence at trial seems to indicate that the parties experienced a number of marital difficulties throughout the years, culminating in their separation when the defendant left Louisiana and returned to Sundance where he resumed work on the family ranch.
Plaintiff filed suit, seeking a separation on the basis of defendant's abandonment. Defendant reconvened, alleging fault of the plaintiff. Neither party's fault is at issue in this appeal.
Following a three-day court hearing, and after taking the matter under advisement, the district court ruled in favor of the plaintiff, awarding her sole custody of their daughter, with defendant's visitation to take place only at the home of the plaintiff or such other residence or location as she should designate and, further, that such visitation would be restricted to the confines of Lincoln Parish, Louisiana. Additionally, plaintiff was awarded $500 per month as alimony pendente lite and $500 per month in child support.
Defendant argues the abuse of the district court's discretion in awarding the plaintiff sole custody, in awarding her alimony pendente lite, in awarding an excessive amount of child support, and in ordering him to pay all court costs.

CUSTODY AND VISITATION
The child's father presents two distinct issues for our consideration in this regard. He first argues that the district court abused its discretion in awarding the mother the sole custody of the child. He asserts he is equally well-qualified to be the domiciliary parent. The father concedes that the presumption of joint custody does not apply since one of the parties resides in another state. Alternatively, he argues that, should this court disagree with him regarding the custody issue, the district court abused its discretion in only allowing severely restricted visitation. We will address these matters separately.
A district court's award of custody is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. Risher v. Risher, 511 So.2d 1220 (La.App. 2d Cir. *171 1987). The linchpin of custody determinations is the best interest of the child. LSA-C.C. Art. 146.
The evidence indicated that the child was born in Louisiana and was less than three years old when her father left the state at the time of his physical separation from the mother. Since that time, he has had only limited contact with the child and has exercised visitation with the child only when in the state for judicial proceedings in this matter below. The mother has raised the child alone for the last two years with child care assistance from her mother and has shouldered most of the financial burden of supporting the child. Finally, Sundance, Wyoming, and Ruston, Louisiana, are approximately six hours apart when one travels by a combination of plane and automobile.
In Ezell v. Kelley, 513 So.2d 454 (La. App. 2d Cir.1987), appeal after remand, 535 So.2d 969 (La.App. 2d Cir. 1988), following his divorce from the mother, the father moved to Montana where he was employed as an outfitter/hunting guide. At the time of the divorce, he and the mother had entered into a consent judgment of joint custody giving the mother custody of the children during the school year and giving the father custody of the children during the summer. Following the first summer of the father's visitation, as the children were getting ready to return to the mother for the school year, the father filed suit to modify the joint custody arrangement. The district court granted the father's request, reversing the previous arrangement.
This court reversed the district court because the mother had raised the children since their birth and exercised physical custody for nine months following the separation and divorce, the children had a healthy relationship with the mother, stepfather, and grandparents and were doing well in school in Louisiana. Contrarily, the father's occupation kept him away from home for extended periods of time and the children would be required to attend a small school ten miles away, which would have required a four-wheel drive vehicle as school transportation in the winter. Finding the stability and continuity of the existing custody situation to be an important factor, this court reversed the district court and reinstated the previous custody arrangement.
Similarly, in this case, the child has been with the mother from the time of her birth and has spent the last two years in the sole custody of the mother. Further, the father's domicile and the mother's domicile are over 1000 miles apart, a distance which makes one of the purposes of joint custody, that is, frequent and continuing contact, extremely difficult.
We find no abuse of discretion in the district court's award of sole custody to the mother. Where one parent is attempting to remove a child from the court's jurisdiction, that parent must show that there is good reason for the move and that the move is in the child's best interest. Stewart v. Stewart, 525 So.2d 218 (La.App. 1st Cir.1988). We believe that the stability and continuity of the existing situation, combined with the substantial distance between the plaintiff and defendant, support the district court's award of sole custody to the plaintiff. Ezell v. Kelley, supra.
The father alternatively argues that the district court abused its discretion in restricting his visitation to the home of the mother' or a place of her choosing within the confines of Lincoln Parish. He argues that this record contains no evidence that the child would be in any danger with him, that visitation only at the mother's house or a place of her choosing would be unnatural and would impede the development of a father-child relationship, and that, under the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act, Louisiana would retain jurisdiction over this matter. Because the mother was of the opinion that the child should not be away from her for a period of time in excess of an overnight visitation, she felt very strongly that the father should not be permitted to take the child to Wyoming for purposes of visitation.
We agree with the father. The instant record contains no evidence in support of *172 such restrictive terms of visitation. The social worker who evaluated the parties and rendered a report to the district court to assist in the custody determination felt very strongly that the father should be given unrestricted visitation inside the state of Louisiana and possibly in certain specific locations nearby if he has friends in those locations. He added that it is "very important that the relationship between this daughter and father not be permanently disrupted." He opined that the mother's fear of the father keeping the child in Wyoming was exaggerated. However, he added that Wyoming is distant and the child was still quite small and he could not be sure whether a long visitation with complicated airline and driving connections would be in the best interest of the child. Finally, he recommended that the court supply immediate relief to the father in terms of visitation and that visitation at the father's expense for a two-week period be planned in Wyoming at some considered time in the future.
We conclude that the district court abused its discretion in burdening the father's visitation "privilege" with so many restrictions. Accordingly, the district court judgment limiting the defendant's visitation, including all geographical limitations, is hereby reversed. However, because of the apparent animosity which continues to exist between the parties, it would appear that a detailed and concrete visitation plan is necessary, which is a matter more properly within the province of the district court rather than this court; thus, a remand of this matter is required in order that such a plan may be implemented. However, we commend to the district court's attention that any visitation plan implemented below should fall within the following broad parameters:
1. The defendant should be given at least one complete weekend of visitation per calendar month, from early Friday evening through early Sunday evening. Although that weekend should be a designated weekend each month, provisions should be made for those instances when one or both parties need to reschedule visitation.
2. The defendant should be granted two weeks visitation during the next summer vacation, which period should increase by two weeks per year until it reaches a maximum of eight weeks visitation.
3. Major holidays should be shared.
4. Visitation should be at a location of the defendant's choosing.
5. The child should be accompanied on any travels by a parent or grandparent, at defendant's cost.
While we recognize that the significant distance between the parties will realistically prevent the defendant from taking advantage of most weekend visitation opportunities with his child, a set schedule at least gives him specific terms with which to plan for those opportunities when his schedule and finances permit. See Melton v. Melton, 486 So.2d 279 (La.App. 3rd Cir. 1986).

ALIMONY PENDENTE LITE
The defendant argues that the district court abused its discretion in awarding his wife alimony pendente lite. The plaintiff argues that the defendant should not be permitted to reduce or avoid his alimentary obligations because he intentionally terminated his employment and returned to a low-paying job in Wyoming without first seeking a better paying job.
The general rule in awarding alimony pendente lite requires that the award be proportionate to the needs of the claimant spouse and the means of the other spouse. If the needs of the claimant exceed the ability of the other to pay, then alimony pendente lite should be fixed at a sum which will as nearly as possible be just and fair to all parties involved. LSA-C.C. Art. 148; Kaplan v. Kaplan, 453 So.2d 1218 (La.App. 2d Cir. 1984), writ denied, 458 So.2d 484 (La.1984); Whatley v. Whatley, 430 So.2d 129 (La.App. 2d Cir.1983).
The amount of alimony pendente lite is left largely within the sound discretion of the trial judge and will not be disturbed on appeal unless that discretion *173 has been abused. Khaled v. Khaled, 424 So.2d 370 (La.App. 2d Cir.1982).
The purpose of alimony pendente lite is to provide support temporarily, pending litigation, for the spouse who does not have sufficient income for his or her maintenance. Alimony pendente lite is, in essence, designed to maintain the status quo insofar as the economic circumstances of the marriage are concerned. It relates to facts as they existed during the time the parties were living together and as they actually exist at the time the litigation commences, not to future possibilities and capabilities. Hollowell v. Hollowell, 437 So.2d 908 (La.App. 2d Cir.1983).
Plaintiff's threshold argument is that the defendant should not be permitted to avoid his alimentary obligation because he unilaterally and voluntarily quit a wellpaying job and moved to Wyoming, where he returned to a job paying unreasonably low wages. However, as defendant points out, there is a basis for his having done so: the job to which he returned was the only job he had ever known prior to his marriage to the plaintiff, he returned to work for a family-owned corporation in which he held a nominal interest, and where else was defendant to go after separating from his wife other than to his family and home town? Under the circumstances of this case, particularly considering the defendant's obvious lack of ties to Louisiana and the fact that he clearly moved here in an effort to placate his wife, we agree.
Based on the evidence before this court, the plaintiff, a registered nurse, earns a gross monthly salary of $1,444.78. The defendant, a ranch hand on a ranch owned and operated by a family-owned Subchapter S corporation, earns a gross monthly income of $600.00. However, the defendant is also provided with a house and major upkeep on that residence by the ranch, utilities, a motor vehicle, motor fuel, and other amenities. Accordingly, the amount of money which he is paid each month does not accurately reflect the extent of his earnings. See Whatley v. Whatley, supra.
When viewed in this manner, it appears that there is little or no disparity in income between the defendant and the plaintiff, Reed v. Reed, 480 So.2d 321 (La.App. 5th Cir.1985). Further, the evidence shows that both parties have reasonable living expenses in excess of their incomes. Thus, the question becomes whether either party has the ability to pay alimony. See Khaled v. Khaled, supra.
Under the circumstances presented, we must conclude that the district court abused its discretion in awarding the plaintiff $500 per month in alimony pendente lite. It is apparent that she is capable of earning sufficient income to provide for her own personal needs in light of her education, training, and earning ability, and in light of the fact that her affidavit of income and expenses was demonstrated to be exaggerated in several respects. For example, she claimed to spend $507 per month for rent or mortgage payments, but acknowledged that this home was being sold and she failed to present evidence regarding her new monthly housing needs. Further, she claimed to spend $175 per month for electricity where the average monthly bill for the year preceding the separation was shown to be $57; she claimed $50 per month for natural gas where the average monthly bill was $30; and she claimed $20 per month for water and sewerage where it was shown to have been only $12 per month. Further, it does not appear that the defendant has the means with which to pay alimony pendente lite, whether plaintiff's needs are exaggerated or not.
Their incomes appear to be approximately effectively equal. Thus, the important point is that it appears that neither has the means to pay alimony pendente lite. Accordingly, we reverse the trial court in this regard and reject plaintiff's claim for alimony pendente lite. In light of the relative impecunity of both parties, it seems clear to us that our decision regarding alimony pendente lite should be applied retroactively. Hogan v. Hogan, 549 So.2d 267 (La.1989).

*174 CHILD SUPPORT
We now turn to the issue of child support. Defendant argues that the district court abused its discretion in awarding an excessive amount of support. Plaintiff essentially reiterates her argument that the defendant is capable of providing said support and should not be permitted to avoid his obligation by assuming a low-paying position as a ranch hand.
Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children. LSA-C.C. Art. 227. Both parents are obligated to contribute to the support of children. Osborne v. Osborne, 512 So.2d 645 (La.App. 2d Cir. 1987). Each must contribute to the child's support in light of the needs of the child as well as the circumstances of those who are obligated to meet those needs. LSA-C.C. Art. 231; Sims v. Sims, 457 So.2d 163 (La.App. 2d Cir.1984); See also Miller v. Miller, 475 So.2d 40 (La.App. 2d Cir.1985). Children are entitled to support in an amount sufficient to maintain them in a style commensurate with the standard of living the family enjoyed before the marriage terminated. This obligation is on both parents. Miller v. Miller, supra; Osborne v. Osborne, supra.
The difficulty of determining precisely how the joint household expenses are to be apportioned between the parent and the child has been noted. Osborne v. Osborne, supra. In some cases, the expenses have been apportioned on a pro rata basis according to the number of people in the household. Other cases have found a pro rata division inappropriate, especially where, as in the instant case, the only residents of the domiciliary household are the domiciliary parent and one child. A child does not "use" one-half of the monthly mortgage payment or rent, utilities, and other expenses. Chaffee v. Chaffee, 398 So.2d 1169 (La.App. 2d Cir.1981). See also Osborne v. Osborne, supra, and cases cited therein.
The calculation of child support by a mathematical formula is impossible and all of the varying facts and circumstances of each individual case should be taken into consideration in fixing the amount awarded. Sims v. Sims, supra; Hudson v. Hudson, 421 So.2d 1188 (La. App. 2d Cir.1982). LSA-C.C. Art. 227 has never been construed jurisprudentially to mean that in all cases the parents' obligation to provide for the financial support of the child must be prorated equally between them. Sims v. Sims, supra. The goal of the district court should be a fair division of support between the parties. Cobb v. Cobb, 554 So.2d 174 (La.App. 2d Cir.1989). Furthermore, the maintenance referred to in that article is not limited to monetary contributions but includes the day-to-day care and maintenance which the custodial parent gives to the child by virtue of his or her physical presence and efforts. Ducote v. Ducote, 339 So.2d 835 (La.1976); Chaffee v. Chaffee, supra; Sims v. Sims, supra; Osborne v. Osborne, supra.
Even taking into account those non-monetary contributions made by the domiciliary parent as required by Ducote and Chaffee, we believe that the defendant has been saddled with a disproportionate share of the total child support obligation. Considering their respective salaries, the total amount of a reasonable monthly child support obligation, and the district court's allocation of the child support obligation between the parties, it appears that the defendant is expected to contribute virtually all of his disposable income each month to the support of the child while the plaintiff is not required to make any monetary contribution to the support of the child.
In addition to our independent determination that the district court abused its discretion in disproportionately allocating the child support obligation between the parties, we find further support in the newly enacted child support guidelines, LSA-R.S. 9:315 through 9:315.14, inclusive, effective October 1, 1989. Although not in effect at the time the proceedings below were initiated, we believe that the principles and guidelines contained therein are particularly helpful as secondary references in a situation such as this. See Cobb v. Cobb, supra at 176.
*175 Based upon the schedule of support contained in LSA-R.S. 9:315.14, even using the defendant's salary on the job which he held in Louisiana prior to the separation, it appears that the total basic child support obligation for both parties in the instant case would have been approximately $525 per month. However, we have already noted that the defendant's return to a lower paying job following his departure from Louisiana was not unreasonable under the circumstances. Accordingly, we will base his ability to pay on his present salary, taking into account that some of his necessities of life are provided to him in lieu of salary. As we have noted, it appears that the defendant and plaintiff earn approximately the same monthly salary.
Were the guidelines for determination of child support in effect at the time of this proceeding, the schedule would have provided for approximately $450 per month in total child support for the minor in this case. When an appellate court finds the trial court erred in the amount of its award for alimony or child support, the appellate court is not free to award an amount it considers "appropriate" based on the evidence, but can only lower the amount to the highest point which is reasonably within the discretion of the trial court. Cobb v. Cobb, supra; Meyers v. Meyers, 344 So.2d 451 (La.App. 2d Cir. 1977). Considering the non-monetary contributions by the domiciliary parent, we conclude that the highest amount of child support which the district court could have ordered defendant to pay would have been $300 per month. The judgment below will be amended accordingly and this amendment will likewise be retroactive.

COURT COSTS
Defendant finally complains that he was required to pay all costs of the proceeding below, especially the cost of the psychologist whose evaluations of the parties and recommendations were provided to the district court as assistance for his custody determination. The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court, LSA-C.C.P. Art. 1920, and his allocation of those costs will not be disturbed absent evidence of an abuse of that discretion. We conclude that the district court did abuse its discretion in requiring the defendant to pay all costs of the proceeding below. Accordingly, we will amend the judgment to allocate one-half of the court costs to each party. LSA-C.C.P. Art. 2164.

CONCLUSION
In summary, the judgment appealed is affirmed to the extent that it awards sole custody of the minor child to the plaintiff Mary Cavender Schelldorf. The district court's judgment regarding visitation is reversed and the case is remanded to the district court to formulate and implement a plan of visitation consistent with the views expressed herein. The district court judgment awarding alimony pendente lite to the plaintiff is reversed, and the demands by plaintiff for alimony pendente lite are rejected retroactive to judicial demand. The award of child support to the plaintiff, Mary Cavender Schelldorf, is amended, and the defendant, David Warren Schelldorf, is ordered to pay child support to Mary Cavender Schelldorf in the monthly amount of $300 for support of the minor child, Hannah Leigh Schelldorf, retroactive to judicial demand.
All costs of these proceedings are assessed equally between the parties.
AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART, and REMANDED.