756 So.2d 698 (2000)
Mark Anthony THOMEY, Plaintiff-appellant,
v.
Deborah Ann Hawkins THOMEY, Defendant-appellee.
No. 33,000-CA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2000.
*699 Charles R. Joiner, West Monroe, Counsel for Appellant.
Eade & Verlander, L.L.P. by Paul J. Verlander, Monroe, Counsel for Appellee.
Before NORRIS, STEWART and CARAWAY, JJ.
CARAWAY, J.
In this child and spousal support case, the trial court awarded the domiciliary parent $1,054 per month in child support, as well as $415 per month in interim periodic spousal support. The plaintiff-father *700 appeals, complaining that his payments on business loans for his self-employment were not considered by the trial court in determining both support obligations. Rejecting the plaintiffs contentions, we affirm the ruling of the trial court.

Facts
Mark and Deborah Thomey were married on May 14, 1982. On March 5, 1998, Mark filed for divorce seeking primary custody of the two minor children, Matthew and Justin. Deborah answered Mark's petition on March 11, 1998, and filed a reconventional demand requesting that she have primary custody of the minor children. Deborah also requested a determination of child custody, child support and interim spousal support.
The parties were granted a divorce in November 1998, while the issues of custody, child support and spousal support were heard on December 14, 1998. The trial court awarded joint custody of the minor children to the parties, and ruled that primary custody of the children would lie with Deborah. The trial court also ordered that Mark be granted specified visitation in accordance with a child custody and visitation schedule.
A considered child custody, child support and interim spousal support judgment reflecting these rulings was rendered on March 31, 1999. The trial court based its judgment on the support issues after determining Mark's monthly income to be $5,004.32 and Deborah's to be $1,872.08. The court ordered Mark to pay Deborah $1,054.00 per month for child support and $415.00 per month as interim periodic spousal support.
Mark appeals the trial court's rulings and complains that the trial court erred in calculating his income to determine the amount of his monthly child support obligation. Furthermore, Mark complains that the trial court erred in awarding Deborah interim periodic support, due to his inability to pay.

Discussion

Child Support
Mark contends that the trial court erred in calculating the income he earns as a self-employed consulting engineer under the child support guidelines of La. R.S. 9:315, et seq. He claims that the $5,004.32 gross monthly income determination of the trial court fails to take into account $25,265.07 which Mark paid as loan payments for business loans during 1998.[1] Thus, Mark asserts that his monthly "gross income" for purposes of the support guidelines should be reduced by $2,105.42 ($25,265.07 ÷ 12 months) for the amount of this necessary monthly expense for the business indebtedness.
Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children. La. C.C. art. 227. Both parents are obligated to contribute to the support of children. Schelldorf v. Schelldorf, 568 So.2d 168 (La.App. 2d Cir.1990); Osborne v. Osborne, 512 So.2d 645 (La.App. 2d Cir.1987). Children are entitled to support in an amount sufficient to maintain them in a style commensurate with the standard of living the family enjoyed before the marriage terminated. Schelldorf, supra. When reviewing an award of child support, an appellate court will not overturn the trial court's factual determinations unless, in light of the record taken as a whole, they are manifestly erroneous or clearly wrong. Havener v. Havener, 29,785 (La.App.2d Cir.8/20/97), 700 So.2d 533.
*701 The child support guidelines are set forth in La. R.S. 9:315, et seq., and are to be used in any proceeding to establish or modify child support. The measurement of "gross income" for determining the monthly amount of child support is set forth in La. R.S. 9:315(4), which provides in pertinent part:
(4) "Gross income" means:
(b) Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals.
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
From this statutory guidance, the self-employed owner of a proprietorship or professional practice is entitled to deduct from the gross receipts of that business only those "ordinary and necessary expenses required to produce income." With this statutory definition, we note the specific discussion of "the accelerated depreciation component of depreciation expenses" which is excluded as an "ordinary and necessary expense." Thus, by implication, a non-accelerated straight-line depreciation expense of a business asset required to produce income may be an ordinary and necessary expense. While the statute makes this mention of depreciation, the courts have been left to judge the deductibility of business loan expense without any specific statutory discussion of such loans, and the jurisprudence reflects mixed results. Roberts v. Roberts, 95-1626 (La. App. 4th Cir.6/5/96), 677 So.2d 1042; Mayo v. Crazovich, 621 So.2d 120 (La.App. 2d Cir.1993).
Mark presented the accounting data for his engineering consulting business based upon the records of his checking accounts. The accounts showed payments for business expenses and personal expenses. The court sorted out the information and arrived at the $5,004.32 amount of income based upon its analysis of the gross receipts minus the ordinary and necessary expenses of a business. Expenditures on personal expenses were added back to Mark's claimed income for the determination of his monthly gross income. Mark provided no summary accounting statements for his business or his 1997 tax return, and he offered no testimony by an accountant which may have aided in the explanation of the ordinary and necessary expenses of the business.
As to the disputed business loans, the record shows that Mark paid $25,265.07 in loan payments during the eleven months of 1998 upon which the trial court primarily focused in making its ruling. Contrary to Mark's assertion, the trial court allowed the interest portion of the 1998 loan payments to be deducted as ordinary and necessary expenses in arriving at the $5,004.32 income figure. The loan payments can be seen from Mark's records as being applied to three separate loans. Well over one-half of the indebtedness represented loans to his business for temporary financing to aid in the cash flow of the business. Upon collection of the accounts receivables from clients, the loans were paid off. A second loan was on Mark's truck which he admittedly utilized only 30% of the time for his business. A final category was for the monthly installments for a loan which Mark had incurred in starting his business in 1996. Mark offered no explanation of the use of the *702 proceeds of this business loan, nor did he explain the amount and amortization of the indebtedness. If the loan was used to purchase assets "required to produce income," Mark offered no accounting explanation whether depreciation expense may apply to those assets or why the principal payments on the loan for the assets can be considered "ordinary and necessary expenses." From this weak showing regarding these loans, we think the trial court properly deducted only the interest on these loans, and we affirm the trial court's ruling that Mark's "gross income" for purposes of the child support guidelines is $5,004.32 per month. The award of $1,054 per month for child support is therefore affirmed.

Interim Periodic Spousal Support
By this assignment of error, Mark complains that the trial court erred in awarding Deborah interim periodic spousal support because of (1) Deborah's failure to meet her burden of proving need under La. C.C. art. 113; and (2) Mark's inability to pay spousal support.
The trial court is vested with much discretion in determining awards of spousal support. Such determinations will not be disturbed absent a clear abuse of discretion. McDermott v. McDermott, 32,014 (La.App.2d Cir.6/16/99), 741 So.2d 186; Broussard v. Broussard, 532 So.2d 281 (La.App. 3d Cir.1988).
The Louisiana Civil Code's spousal support articles were amended in 1997 by La. Acts No. 1078, Regular Session, and went into effect on January 1, 1998. Pursuant to these amendments, the terms alimony pendente lite and permanent periodic alimony were eliminated, and the terms interim and final periodic spousal support were substituted. La. C.C. art. 111 and its Revision Comments1997(a); Kenneth Rigby, The 1997 Spousal Support Act, 58 La. L.Rev. 887 (1998). The award of either or both is completely independent of the rendition of a judgment of divorce. Id. Interim periodic spousal support generally shall extend no longer than one hundred eighty days after rendition of the judgment of divorce, and like the former alimony pendente lite, its purpose is to maintain the status quo insofar as maintenance and support are concerned. La. C.C. art. 113 and its Revision Comments1997(b); Arrendell v. Arrendell, 390 So.2d 927 (La. App. 2d Cir.1980). Thus, the court may award a party an interim periodic allowance based on the needs of that party, the ability of the other party to pay, and the standard of living of the parties during the marriage. La. C.C. art. 113.
In order to demonstrate need for interim periodic spousal support, Deborah had the burden of proving that she lacks sufficient income to maintain the standard of living that she enjoyed while residing with Mark during the marriage. Hollowell v. Hollowell, 437 So.2d 908 (La.App. 2d Cir.1983); Pellerin v. Pellerin, 97-2085 (La.App. 4th Cir.6/17/98), 715 So.2d 617, 622, writ denied, 98-1940 (La.10/30/98), 727 So.2d 1167. From our review of the record, Deborah met that burden of proof. At trial, Deborah's Affidavit of Income and Expenses was introduced into evidence without objection, showing expenditures exceeding her income by more than $1,000 per month. While the trial court rejected some of those expenditures and others may be further disputed as unnecessary or as prospective contingencies and thus speculative, Deborah's monthly expenses nevertheless exceed the $415 per month award for interim spousal support.
Mark's evidence shows approximately $2,000 for his monthly expenses. He argues that with those expenses, the burden of his $1,054 child support obligation, and the business loan expense discussed above, he has no ability to pay the interim spousal support award ordered by the trial court. We disagree. As stated above, the majority of the $25,265.07 in loan payments which Mark made in 1998 was spent to satisfy the interim loans for the cash flow of his business. Those short term loans were quickly paid out of the receipts from *703 his clients and with a relatively small amount of interest expense. The remaining two loans for his truck and the start-up loan for his business required monthly payments of approximately $900 per month. Considering Mark's $5,003.32 monthly income and subtracting Mark's $2,000 personal expenses, his $1,054 child support obligation and his $900 monthly loan expenses, he has in excess of $1,000 to pay the interim spousal support. Such spousal support payment serves to maintain the parties' standard of living by offsetting the significant disparity between Deborah's income and Mark's income.
With her income and the trial court's award for interim spousal support still leaving Deborah with a possible monthly deficit, the trial court had ample discretion to award her $415 per month in interim periodic spousal support. Mark's arguments concerning his inability to pay spousal support are unfounded.

Conclusion
For the foregoing reasons, the judgment of the trial court is hereby affirmed. Costs of this appeal are assigned to Mark Anthony Thomey.
AFFIRMED.
NOTES
[1] In reaching its determination of the $5,004.32 monthly gross income amount, the trial court considered Mark's commingled business and personal accounting data for the eleven month period in 1998 preceding the trial. The trial court also compared that amount with Mark's 1997 data (the first full year of his self-employment) and the (approximate) $5,200 monthly salary which Mark earned while employed as an engineer in 1996.