661 So.2d 706 (1995)
Anderson C. WARLICK, III, Plaintiff-Appellee,
v.
Rebecca Diane Folds WARLICK, Defendant-Appellant.
No. 27,389-CA.
Court of Appeal of Louisiana, Second Circuit.
September 29, 1995.
*707 Geary S. Aycock, West Monroe, for appellant.
Paul Henry Kidd, Jr., Monroe, for appellee.
Before SEXTON and HIGHTOWER, JJ., and PRICE, J. Pro Tem.
PRICE, Judge Pro Tem.
The plaintiff, Rebecca Diane Folds Warlick, appeals an adverse trial court judgment modifying an existing joint custody arrangement and naming her former husband, *708 Anderson C. Warlick, III, as the domiciliary parent of their three minor children. For the following reasons, we affirm.

FACTS
A.C. Warlick and Rebecca Diane Folds Warlick were married August 10, 1979, and maintained their matrimonial domicile in Ouachita Parish. Three children were born of the marriage: Christina Lynn Warlick (February 2, 1984), Bradley Steven Warlick (September 12, 1987), and Erica Lane Warlick (December 8, 1988). After a period of marital discord and several brief physical separations, the couple permanently separated on May 21, 1993.
On August 2, 1993, Mr. Warlick filed a petition for divorce and custody of the minor children, and Ms. Warlick reconvened seeking the same on August 13, 1993. The parties were sent to mediation pending the rule for custody which was set for hearing on November 8, 1993. In the interim, Ms. Warlick lost her job as Vice-President of Finance at St. Francis Medical Center in Monroe. At the time of the November 8, 1993 hearing, the parties entered into a stipulated judgment on rule wherein they agreed to share custody of the children.
The joint custodial implementation plan provided, inter alia, that neither parent could move and take the children more than 35 miles from Monroe without first obtaining court approval or written permission from the other parent. Neither party was ordered to pay child support.
Mr. Warlick had physical custody of the children from 6:00 p.m. Thursday to 6:00 p.m. Sunday, and Ms. Warlick had custody from 6:00 p.m. Sunday to 6:00 p.m. Thursday. The parties reasonably complied with the custody plan until on or around February 15, 1994, when Ms. Warlick found employment in Port Arthur, Texas, and subsequently relocated. In accordance with the provisions of the custody order, the children stayed in Ouachita Parish with their father. On March 23, 1994, Ms. Warlick, who wanted the children to reside with her in Texas, filed a rule to modify custody. In response, Mr. Warlick filed a rule for child support on April 27, 1994, the date the divorce was rendered. Both rules were scheduled for hearing on May 18, 1994.

ACTION OF THE TRIAL COURT
Following a two-day trial and a post-trial briefing, the trial court prepared a written opinion and rendered a final judgment designating Mr. Warlick as the domiciliary custodian of the three minor children; it awarded custody to Mr. Warlick for nine months, during the school year, and awarded custody to Ms. Warlick for the summer months. Additionally, it awarded visitation to each party for the period that the other had physical custody of the minor children and ordered the parties to agree on a mutually designated exchange site.
The trial court awarded Mr. Warlick child support in the amount of $1,685.03 per month, subject to a 70 percent reduction during the summer when the children were in Ms. Warlick's custody. It further ordered Ms. Warlick to continue to maintain the minor children as beneficiaries under her major medical and hospitalization insurance. Both parents were ordered to pay a pro rata share of any noncovered medical and dental expenses, 21.69 percent from Mr. Warlick and 78.31 percent from Ms. Warlick, that being the ratio of the parties' respective incomes to the total monthly adjusted gross income as required by statute. Ms. Warlick was awarded the income tax dependencies for two of the minor children.
Ms. Warlick, appellant, assigns the following as error:
(1) the trial court erred in requiring appellant to prove a change in circumstances for custody in derogation of the previous stipulation of the parties;
(2) it erred in rejecting the recommendations of Dr. Tony Young, a mental health professional who evaluated the parties and the minor children;
(3) it erred in awarding the primary domiciliary custody of the minor children to A.C. Warlick based on the evidence presented and testimony adduced; and,
(4) should this court reverse the trial court's judgment, the child support award should also be reversed and the worksheet *709 information regarding Mr. Warlick's support obligation should be instated.
Mr. Warlick has answered the appeal and assigns additional errors, to-wit:
(1) the trial court erred in setting child support too low during the summer months of June, July and August;
(2) it erred in deviating from the guidelines presumption that the domiciliary parent should claim dependents and in failing to give express or valid reasons in accordance with LSA-R.S. 9:315.1B.;
(3) it erred in awarding, for IRS purposes, two of the three income dependencies to Ms. Warlick;
(4) it erred in its requirement that he drive half way to Port Arthur, Texas for the purpose of visitation exchange of the minor children with Ms. Warlick; and,
(5) it erred in not issuing a wage assignment.

MODIFICATION OF CUSTODY PLAN

(Appellant's Assignments of Error Nos. 1, 2, 3, & 4)
Ms. Warlick contends the trial court erred in awarding to Mr. Warlick domiciliary custody of the three minor children. First, she contends, the court erred in requiring her to prove that a change in circumstances had occurred since the initial custody decree, where the joint custody plan specifically provided that, in the event either party sought modification of custody, neither party would be required to prove a change in circumstances.
When a trial court has made a considered decree of permanent custody, the party seeking a change in custody bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change in environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
Where, however, no evidence was adduced at the district court level prior to the entry of the joint custody order which is sought to be modified, that joint custody decree is not a "considered decree" with the meaning of Bergeron. Smith v. Smith, 615 So.2d 926 (La.App. 1st Cir.), writ denied, 617 So.2d 916 (La.1993); Pulley v. Pulley, 587 So.2d 116 (La.App.2d Cir.1991); Schubert v. Schubert, 605 So.2d 666 (La.App.2d Cir.1992), writ denied, 609 So.2d 230 (La. 1992). In such a situation, a party seeking to modify the joint custody arrangement must still prove that a material change in circumstances had occurred since the original decree and that a change of custody is in the best interest of the child. Id.
We need not address the issue of whether Ms. Warlick is required to show a change of circumstances has occurred since the original decree. She moved to Port Arthur, Texas, which is approximately 254 miles away from Monroe, Louisiana, where Mr. Warlick continues to reside. In this instance, the original joint custody arrangement would not work. It would be impossible for the parties to split custody of the minor children as they did before Ms. Warlick relocated to another state. The facts reveal that Ms. Warlick's relocation to Texas constitutes a change of circumstances necessitating a modification of custody. See Myers v. Myers, 561 So.2d 875 (La.App.2d Cir.1990).
We conclude, after reviewing the trial court's written reasons for judgment, that it applied the proper burden of proof and based its findings on factors relevant to the best interest of the children. See LSA-C.C. art. 134.
Ms. Warlick next submits that the trial court erred in disregarding the testimony and report of Dr. Tony Young, a clinical psychologist hired by Mr. Warlick to evaluate the parties and their children. Following interviews with all involved, and after listening to several witnesses testify at trial, Dr. Young recommended that domiciliary custody be awarded to the mother, due to the children's emotional attachment to her and their expressed desire to live with her. He admitted that much of the testimony he heard depicted the mother's past behavior in a negative light, and that he deemed such *710 behavior as unhealthy and detrimental to the children. He admitted that, in his opinion, appellee had been doing a decent job with the children, but stated that Ms. Warlick's financial situation seemed more stable. He testified that she appeared to be in a position to dictate with more power regarding her job.
In its written opinion, the trial court noted that, while it did not lightly disregard Dr. Young's recommendation, it could not disregard the extensive and unrefuted testimony adduced which strengthened its belief that Mr. Warlick could provide the more stable, nurturing, and loving environment for the children.
After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. The weight given expert testimony is dependent upon the professional qualifications and experience of the expert and the facts upon which the opinion is based. Goodwin v. Goodwin, 618 So.2d 579 (La.App.2d Cir.), writ denied, 623 So.2d 1340 (La.1993). The trial judge has the discretion to substitute his common sense and judgment when such a substitution appears warranted upon the record as a whole. Id. We conclude that, in the present case, the trial court's evaluation and rejection of Dr. Young's report, testimony, and recommendation is not manifestly erroneous or clearly wrong and, thus, will not be disturbed on appeal.
Appellant next submits the trial court erred in awarding domiciliary custody to Mr. Warlick based on the testimony and evidence adduced.
The paramount consideration in a change of custody case is always the best interest of the child. Barnes v. Cason, 25,808 (La.App.2d Cir. 5/4/94), 637 So.2d 607, writ denied, 94-1325 (La. 9/2/94), 643 So.2d 149. In determining the best interests of the child in custody cases, there must be a weighing and balancing of factors favoring or opposing custody in the respective competing parents on the basis of the evidence presented in each particular case. Boyd v. Boyd, 26,292 (La.App.2d Cir. 12/7/94), 647 So.2d 414. LSA-C.C. art. 134 enumerates twelve non-exclusive factors relevant in determining the best interest of the child.
The trial court's determination is to be given great weight and will be overturned only when there is a clear abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988); McKinley v. McKinley, 25,365 (La.App.2d Cir. 1/19/94), 631 So.2d 45; Briscoe v. Briscoe, 25,955 (La.App.2d Cir. 8/17/94), 641 So.2d 999.
In the case sub judice, the trial court was faced with a difficult decision. It determined that awarding domiciliary custody to Ms. Warlick, who earned in excess of $5,400 per month, would clearly provide the children with greater material comforts and advantages commensurate with her superior earning power. However, the trial court concluded that Mr. Warlick clearly provides a superior nurturing environment and more than adequate living accommodations. See Boyd v. Boyd, 26,292 (La.App.2d Cir. 12/7/94), 647 So.2d 414.
Three witnesses, including Dr. Young, testified on behalf of the appellant. As noted by the trial court, an impressive array of witnesses testified on behalf of Mr. Warlick, including his brother, sister-in-law, niece, mother, friends, and Ms. Warlick's stepmother. Each party testified also on his or her own behalf.
The record reveals that both parents have provided for the three minor children's needs in the past. However, witnesses consistently testified that Ms. Warlick frequently screamed and cursed at her children. She had a habit of physically striking them when she was angry. Ms. Warlick admitted that she cursed around the children, and that she may have left handprints or bruises on them when she swatted or hit them with a belt. There was testimony presented that she slapped one of her children in public and that she struck the children on other occasions in the face, chest, back, arms or legs. The evidence reflects that sometimes they cried or were scared or shocked. There were two instances when one of the girls suffered a dislocated arm. Ms. Warlick testified that both times, the injury resulted from an accident. Mr. Warlick contradicted appellant's *711 explanation and testified that she caused the first injury by yanking the child by the arm.
The evidence shows that appellant regularly drank beer in the presence of her children during her off duty hours, along with an unmarried female friend, Lisa Blaine, and on occasion became intoxicated. Some of the witnesses gave accounts of an incident which occurred at Kiroli Park during a child's birthday party. Ms. Warlick arrived at the park, where no alcohol beverages were allowed, with a beer, and became loud and indignant when someone threw the beer in the trash. Ms. Warlick admitted that she drank to excess sometimes, but not on a regular basis.
To the contrary, Mr. Warlick was depicted by witnesses as a loving, affectionate parent. The evidence demonstrates that he spent time with his children and nurtured them. Even Dr. Young and Leonard Folds (appellant's father), both of whom testified on behalf of the appellant, admitted that Mr. Warlick did a fine, decent job of raising his kids. However, Dr. Young testified that he was concerned about appellee's financial situation.
The trial court determined that Mr. Warlick was more than capable of attending to the children's needs and that at least eight of the twelve factors enumerated in LSA-C.C. art. 134 militated in favor of awarding domiciliary custody to him. It noted the evidence revealed that the children had done well in his custody since Ms. Warlick relocated to Texas, and the testimony showed he had taken care of the children, at least on a semi-regular basis, since their birth. According to the trial court, Mr. Warlick had succeeded in meeting the children's physical needs, in performing various household chores, in supervising homework, and in nurturing the children. It noted that the two oldest children were in school in Ouachita Parish and seemed to be doing quite well.
Additionally, the trial court spoke of the strong familial relationship between the children and Mr. Warlick's rather large immediate family, all of whom reside in the Monroe area. The children's friends and recreational activities are in Ouachita Parish. Although Ms. Warlick's father testified about a vague desire to relocate to Texas at some unspecified future time, he resided at the time in Ouachita Parish and had a relationship with the children. If the children moved to Port Arthur, the closest relatives would be several hours away.
The court stated that its findings regarding Ms. Warlick's parenting skills were based upon the testimony of noninterested parties. It was established through testimony that: Appellant had a propensity to drink alcoholic beverages to excess on occasion; she "peppered" her language regularly with profane and vulgar expressions, even to the point of not cursing merely in front of the children but directly at them; and she resorted to screaming outbursts, sometimes physically striking the minor children, on the face and chest with an open hand as well as with a belt, when the occasion warranted the imposition of discipline.
Of significant and grave concern to the trial court was Ms. Warlick's seeming indifference to providing any type of religious instruction for the minor children, and the inappropriateness of the language she had used in front of the children or directed at the children. It stated that children learn by example, and this would be a most unbecoming example for children to emulate, especially two young girls. It noted that, while Mr. Warlick was not free from the use of profanity, the evidence did not preponderate that he ever directed it at his children, as did Ms. Warlick. Particularly recalled by the court were accounts of the incident at Kiroli Park involving Ms. Warlick.
The trial court's decision to designate Mr. Warlick as domiciliary parent was made after all the evidence was meticulously reviewed. The trial court is in a better position to evaluate witnesses and, taking into account the proper allocation of trial and appellate functions, great deference is accorded to the decision of the trial court. McKinley v. McKinley, supra. We conclude that, under the facts and circumstances of this case, there is no abuse of discretion and no manifest error, and, thus, there is no reversible error with respect to the award of custody.
*712 Finally, appellant asserts that, should this court reverse the custody award, it should also reverse the child support award obligating her to pay child support and instate appellee's child support obligation. Because we affirm the trial court's ruling, we decline to reverse the award of child support payable by Ms. Warlick.

CHILD SUPPORT AWARD

(Appellee's Assignments of Error Nos. 1, 2, 3, 4, & 5)

Reduction of Support During Summer Months
Appellee contends the trial court erred in setting child support too low during the summer months of June, July, and August, when the children reside with the appellant. The appellant's child support is reduced by 70 percent during those months.
LSA-R.S. 9:315.8(E) provides:
In cases of joint custody, the court shall consider the period of time spent by the children with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time. The court shall include in such consideration the continuing expenses of the domiciliary party.
In the present case the trial court did not explain how he arrived at the calculation of the appellant's child support obligation during the summer months. While the above statute mandates that the trial court take into consideration the period of time a child is in the custody of the nondomiciliary parent and the continuing expenses of the domiciliary parent, it leaves to the trial court's discretion any adjustments made. We conclude that the trial court did not abuse its discretion in reducing Ms. Warlick's child support payment by 70 percent during the summer months when the children are in her custody.

Income Tax Dependencies
Appellee next submits that the trial court erred in awarding two of the three dependency deductions to Ms. Warlick. LSA-R.S. 9:315.13 provides:
The amounts set forth in the schedule in R.S. 9:315.14 presume that the custodial or domiciliary party has the right to claim the federal and state tax dependency deductions and any earned income credit. However, the claiming of dependents for federal and state income tax purposes shall be as provided by the Internal Revenue Code.
It is obvious in this instance that the trial court deviated from the child support schedule because the appellant, who is paying substantial child support, is in a higher tax bracket than appellee and would need the dependency deductions to maintain her paying ability. We, therefore, decline to disturb the trial court's award on appeal.

Income Assignment
Mr. Warlick submits, as his last assignment of error, that the trial court failed to include an income assignment as part of the child support order. LSA-R.S. 9:303 provides:
Sec. 303. Income assignment; new orders; deviation
A. In all new child support orders after January 1, 1994, that are not being enforced by the Department of Social Services, the court shall include as part of the order an immediate income assignment unless there is a written agreement between the parties or the court finds good cause not to require an immediate income assignment.
B. For purposes of this Section:
(1) "Written agreement" means a written alternative arrangement signed by both parents, reviewed by the court, and entered into the record of the proceedings.
(2) "Good cause" exists upon a showing by the respondent that any of the following exist:
(a) There has been no delinquency in payment of child support for the six calendar months immediately preceding the filing of the motion for modification of an existing child support order.
(b) The respondent is agreeable to a consent judgment authorizing an automatic ex parte immediate income assignment if he becomes delinquent in child support payments for a period in excess of one calendar month.

*713 (c) The respondent is not likely to become delinquent in the future.
(d) Any other sufficient evidence which, in the court's discretion, constitutes good cause.

...
(emphasis added).
The record reflects that neither party requested an income assignment at the time of trial and, thus, appellant was not made, at that time, to show any of the factors listed in the above statute constituting good cause. The statute provides that the court does not have to require an immediate income assignment if good cause is shown. We conclude that the absence of any evidence in the record indicating that Ms. Warlick is likely to become delinquent constitutes "good cause." Therefore, we decline to include an income assignment as part of the support order.

Transportation Costs
Appellee next submits that the trial court erred in ordering him and the appellant to equally share the costs of transporting and chaperoning their minor children back and forth for periods of physical custody and visitation. We find no abuse of the trial court's discretion in requiring the parents to share transportation costs involved in implementing the joint custody award in the present case. See Doyle v. Doyle, 465 So.2d 167 (La.App. 3rd Cir.1985). Mothers and fathers have a mutual obligation of supporting, maintaining and educating their children. LSA-C.C. art. 227.

CONCLUSION
For the foregoing reasons, we affirm the trial court judgment. All costs of this appeal are divided equally between the appellant and appellee.
AFFIRM.