773 So.2d 185 (2000)
Christine Vaughn CURTIS, Plaintiff-Appellant,
v.
Samuel Dwayne CURTIS, Defendant-Appellee.
No. 34,317-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2000.
*188 Kammer & Huckabay, Ltd. by Charles H. Kammer, III, Shreveport, Counsel for Appellant.
McKeithen & Johnson by Anita D. McKeithen, Shreveport, Counsel for Appellee.
Before STEWART, KOSTELKA and DREW, JJ.
KOSTELKA, J.
Christine Vaughn Curtis, now Rice ("Christine"), appeals the judgment of the trial court pertaining to various issues relating to the custody and support of the minor son of Christine and Samuel Dwayne Curtis ("Sam"). Amending in part, we affirm.

FACTS AND PROCEDURAL HISTORY
On December 26, 1990, during the marriage between Sam and Christine, a child, Joshua ("Josh"), was born. In February 1991, the couple separated and on April 16, 1991, a judgment was rendered granting Christine sole custody of Josh, subject to reasonable visitation by Sam, who was also ordered to pay child support in the amount of $220.00 per month. The parties divorced on November 21, 1991.
Early on, Sam was pursuing his education and did not have much visitation with Josh, but as time went on, Christine increased his access to Josh so that Sam had Josh every other weekend. Eventually, Josh was with Sam from Sunday through Thursday every other week. During a period of time, Sam additionally had Josh on alternating weeks from Sunday through Wednesday as well. During this period, both Sam and Christine remarried people who had children from previous marriages. At the time of trial, Sam also had a new baby with his current wife.
The evidence at trial showed that the cooperative spirit between Sam and Christine waned, with Christine wanting more child support from Sam, and Sam desiring more visitation with Josh. On January 13, 2000, Christine filed a rule to increase support asking for an increase in child support and a split in the cost of Josh's school tuition. Later that same month, Sam filed a rule requesting modification of custody, wherein he sought joint custody, with each parent being designated co-domiciliary parent and neither parent paying child support to the other. But in March 2000, Sam filed an amended rule changing his request to one of sole custody for himself with supervised visitation for Christine. He additionally sought an award of child support.
The trial of this matter commenced on March 15, 2000. Immediately prior to trial, Christine filed a motion in limine and exception of no cause of action in connection with several allegations made by Sam in his amended rule which alluded to the possibility of sexual abuse by Christine. Prior to the trial, the trial court heard arguments on the motion, which was granted in part and referred to the merits in part.
The trial commenced, and after hearing testimony from the parties, Dr. Susan Vigen (who evaluated Josh), Dr. Webb Sentell (who evaluated Christine), and other witnesses called by the parties, the trial court rendered judgment which:
1) Awarded joint custody to Sam and Christine;
2) Named Christine domiciliary parent with Sam to have reasonable visitation as further explained in the Joint Custody Plan;
3) Fixed child support at $525.00 per month beginning April 1, 2000; and
4) Ordered the parties to alternate years for claiming the child exemption on their income tax.
*189 This appeal by Christine ensued in which she raised various assignments of error, which addressed, generally, the issues of child custody, child support, immediate income assignment orders, tax dependency deductions, and the continuing obligation of support.

DISCUSSION

Scope of the Pleadings and Child Custody

(Assignment of Error No. 1)
Christine argues that the trial court exceeded its authority in allowing Sam joint custody when his exclusive request was for sole custody with supervised visitation for Christine. She maintains that although Sam had originally requested joint custody, that request was withdrawn, his request for sole custody was never amended to one for joint custody during the proceedings, and thus the granting of such by the trial court was in error.
In support of her argument, Christine relies on two cases previously decided by this court, Stephens v. Stephens, 30,498 (La.App.2d Cir.05/13/98), 714 So.2d 115 and Havener v. Havener, 29,785 (La. App.2d Cir.08/20/97), 700 So.2d 533. We recognize that both cases stand for the proposition that a trial court cannot expand the pleadings or go beyond the relief requested by a litigant. In each case, the fathers were seeking domiciliary parent status under a joint custody plan, but each was granted sole custody instead. However, as noted by this court in both cases, "The evidence did not expand the pleadings so as to allow the award of sole custody ...." in lieu of the requested domiciliary status. Havener, supra at 536; Stephens, supra at 117. In neither case was evidence presented justifying a possible award by the trial court of sole custody.
In this case, although Sam had originally requested joint custody with co-domiciliary status with Christine, he later amended his rule to request sole custody with supervised visitation for Christine. In its Reasons for Judgment, the trial court noted that, "While the Court is of the opinion that the sole custody request should have been pled in the alternative, it is also of the opinion that since joint custody is less restrictive than sole, the Court has the power to order joint custody in a case such as this." In well-thought-out Reasons for Judgment, the trial court examined in detail the evidence presented by both parties on the custody issue. It reached the determination that the evidence proved good reasons existed for replacing the sole custody decree with a joint custody award, which would be in Josh's best interest, pursuant to La. C.C. art. 134.[1]
Although the issue of joint custody was not before the trial court through the pleadings, the trial court made it clear from the commencement of the proceedings that it would consider evidence on the issue of the propriety of joint custody, despite the exclusive request for sole custody by Sam. Notably, in neither Havener, supra nor Stephens, supra did those trial courts hear evidence on the respective issues decided by those courts. Here, the trial court heard evidence from both parties in connection with the custody of Josh. The trial court noted that prior to the filings in this case, Christine and Sam had managed the sole custody decree as a joint custody situation, and the record reflects that Christine and Sam had cooperated well in caring for Josh. Christine allowed Sam liberal visitation with Josh, basically letting Sam have Josh anytime he wanted. Additionally, Sam voluntarily paid Christine extra child support for a majority of the time leading up to the trial. In support *190 of his request for sole custody, Sam presented evidence to the trial court which he argued proved Christine's bad judgment. The trial court noted in its Reasons for Judgment that Christine's past poor judgment had not adversely affected Josh. On the other hand, Christine argued that Sam's new wife, her two children from a previous marriage, and Sam's new baby, were reasons not to allow joint custody, as Sam's new family distracted him from Josh. Other than the complaint by Christine that Sam did not have the time for Josh that he had before his marriage, she offered no evidence indicating Sam would not be entitled to joint custody. Finally, the trial court noted that both Sam and Christine are fit parents.
La. C.C.P. art. 862 grants the trial court authority to render a final judgment granting the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings. However, a judgment rendered beyond the pleadings is a nullity, although a trial court has the discretion to allow enlargement of the pleadings to conform to the evidence. Stephens, supra at 117, citing, Havener, supra; La. C.C.P. art. 1154; Ussery v. Ussery, 583 So.2d 838 (La.App. 2d Cir.1991); Romero v. State Farm Fire and Cas. Co., 479 So.2d 694 (La.App. 3d Cir.1985).
On appellate review, the determination of the trial court in establishing or modifying custody is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion. Ellinwood v. Breaux, 32,730 (La.App.2d Cir.03/01/00), 753 So.2d 977, 979, citing, Thompson v. Thompson, 532 So.2d 101 (La.1988); Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). Moreover, we are mindful of La. C.C. art. 132, which makes joint custody by the parents the preferred custody arrangement.[2]
At the onset of trial of this matter, the trial court made it abundantly clear that it would hear evidence on and consider the possibility of joint custody of Josh by his parents. It was made apparent to the parties that the trial court would consider the evidence in that vein, and we do not believe that in this instance the trial court impermissibly went beyond the pleadings as the Havener and Stephens trial courts did. The trial court in this instance granted the general and equitable relief the evidence tended to support. Moreover, there is no question that the issue of Josh's custody was before the trial court; thus, the trial court did not consider an issue not brought before it. Therefore, we conclude that the trial court did not abuse its discretion in awarding Sam joint custody of Josh although his pleadings had requested sole custody exclusively.

Visitation

(Assignment of Error No. 2)
The trial court awarded Sam visitation pursuant to the joint custody plan, which stated that Sam would have physical custody of Josh: (1) every other week from Friday at 5:00 p.m. through Wednesday at 5:00 p.m. during the months of September through May; (2) from the 7th at 5:30 p.m. through the 21st at 5:30 p.m. in June and July; (3) from August 3 at 5:30 p.m. through August 17 at 5:30 p.m.; (4) alternating holidays; and (5) at other reasonable times and hours as mutually agreed to between the parents.
Christine argues that the trial court committed reversible error by setting a visitation schedule that required the minor *191 child to switch homes in the middle of a school week because, she maintains, the award was contrary to the expert's opinions and findings and inconsistent with the trial court's own findings of fact.
In visitation matters, as in custody, much discretion is vested in the trial judge, whose decision will not be disturbed absent an abuse of discretion. Evans v. Lites, 30,362 (La.App.2d Cir.06/24/98), 714 So.2d 914, 919, citing, Adkins v. Adkins, 29,088 (La.App.2d Cir.01/31/97), 687 So.2d 1109.
After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. Warlick v. Warlick, 27,389 (La.App.2d Cir.09/29/95), 661 So.2d 706, 710. The weight given expert testimony is dependent upon the professional qualifications and experience of the expert and the facts upon which the opinion is based. Warlick, supra; Goodwin v. Goodwin, 618 So.2d 579 (La.App. 2d Cir.1993), writ denied, 623 So.2d 1340 (La.1993). The trial judge has the discretion to substitute his common sense and judgment when such a substitution appears warranted upon the record as a whole. Warlick, supra.
We recognize the evidence presented at trial, through the testimony of the parties as well as the expert testimony of Dr. Susan Vigen, would tend to indicate that Josh's best interest arguably might not be met by awarding Sam visitation that ended in the midst of a school week. However, the record also clearly and repeatedly indicates that for almost all of Josh's life, he has had extended visitation with his father, as was voluntarily allowed by his mother. The record reflects that commencing in 1994, Sam had physical custody of Josh from Saturday or Sunday through Thursday every other week. For a period of time, Sam even had Josh additionally from Sunday through Tuesday on the other week. This liberal visitation schedule was freely granted by Christine who had sole custody from the time the parties divorced in April of 1991. Sam testified that Christine allowed him to take Josh virtually whenever he asked. Finally, we note the subject of visitation was not brought before the trial court by Christine and was only made an issue as a result of Sam's request for sole custody. Thus, it would appear that up until the trial of the matter, Christine had no problem with the liberal visitation she freely allowed Sam for the majority of Josh's life.
The evidence presented at trial also indicates that Josh had performed well under the visitation schedule that his parents had voluntarily utilized, and the only tangible evidence that Josh might have some problem with the schedule that had been in effect during his entire school career was his most recent report card which reflected some poor grades. However, during this time period, there was testimony by Christine and Sam indicating that the lower grades could have been attributable to an extended illness of Christine during that same time period as well as the arrival of Sam's new baby. The record reflects that Josh's low grades were not necessarily attributable to the fact that he switched homes during the week; in fact, Sam's most recent progress report indicated significant improvement in the area in which he had previously demonstrated weakness.
Christine called Dr. Vigen, a licensed psychologist with further credentials in school psychology, who had met initially with Josh in early 1997 and then in early 2000. Dr. Vigen testified that Josh had a mild attention disorder which causes him to under-perform slightly in school. She noted, however, that Josh's attention has "improved significantly" since 1997, the year Josh began school. It was during this time of Josh's significant improvement that he made a switch mid-week between his parents' homes. Whereas Josh expressed to Dr. Vigen anxiety over being taken from Christine, he also expressed to her a desire to spend more time with Sam. Dr. Vigen also testified that generally she recommends one parent have primary responsibility *192 for a full week of the child's homework, which she characterized as Monday through Thursday nights; however, she acknowledged that if a child was performing reasonably well on an alternating schedule such as Sam and Christine had utilized, then she would see no reason to change. Finally, she noted that for someone with a schedule such as Sam's, weekend visits would probably offer more quality time with the child.
Considering the foregoing, the trial court's award of visitation, which consists of a mid-week switch for Josh between his parents' homes, does not necessarily appear to be an abuse of discretion. Although Dr. Vigen expressed a general preference for one parent to have primary responsibility for a full week of a child's homework, we do not believe it was an abuse of the trial court's discretion to decide otherwise, considering the particular facts in this matter. Of particular importance is the fact that Josh had functioned well with the visitation which had been used by Sam and Christine for years prior to the trial and, in fact, his attention level had improved during that time according to Dr. Vigen. Moreover, the evidence indicates that Josh desired more time with his father, and considering Sam's change in circumstances with his new family and job, as well as his schedule, the trial court's effort to accommodate this desire by awarding Sam weekend visitation without decreasing the number of days the two had together seems reasonable. Therefore, we conclude that the trial court's schedule of visitation was not an abuse of discretion.

Child Support

(Assignments of Error Nos. 3, 4 and 5)
Christine brings three assignments of error in connection with the trial court's judgment on the issue of child support, two of which address the amount of child support awarded to Christine, and the third addressing the retroactivity of the award.

Calculation of Sam's Monthly Income
Christine argues that the trial court erred in its calculation of Sam's income under the Louisiana Child Support Guidelines, La. R.S. 9:315, et seq. (the "guidelines") For the purposes of calculating child support, the trial court determined that Sam's monthly salary was $3,120.00 per month, which was an amount that Christine had presented in a worksheet to which the parties stipulated in closing arguments. However, Christine argues that the trial court should have based Sam's portion of the child support obligation on his 1999 earnings, which were $3,486.14 per month. She maintains the higher number is the proper figure for calculating the child support because Sam did not introduce any documentation to support his lower pay.
If a party is voluntarily unemployed or underemployed, child support must be based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated or is caring for a child of the parties under the age of five years. La. R.S. 9:315.9. Voluntary underemployment is a question of good faith on the obligor spouse. Havener, supra; Gould v. Gould, 28,996 (La.App.2d Cir.01/24/97), 687 So.2d 685. The trial court, however, has wide discretion in determining the credibility of the witness; whether the obligor spouse is in good faith in ending or reducing his income is a factual determination which will not be disturbed absent an abuse of discretion. Havener, supra; Gould, supra; McHale v. McHale, 612 So.2d 969 (La.App. 2d Cir.1993). The trial court's conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error. Havener, supra; Timmons v. Timmons, 605 So.2d 1162 (La. App. 2d Cir.1992), writ denied, 608 So.2d 195 (La.1992); Miller v. Miller, 475 So.2d 40 (La.App. 2d Cir.1985).
The record reflects that Sam was a respiratory therapist and for a period of approximately *193 ten years prior to the trial, he had been employed by Louisiana State University Medical Center ("LSU-MC"). While employed at LSU-MC, he was able to work overtime hours and graveyard shifts, and as a result, his gross salary for the years of 1997, 1998 and 1999 was in excess of $40,000. However, immediately prior to the trial of this matter, he began new employment in the same field with Lifecare, in a position that paid roughly the same hourly rate ($18.00 per hour), but, according to his testimony, did not offer any overtime work. Sam further testified that he took the new position with Lifecare, where he was working nights, because he would shortly move to a daytime shift which would allow him more time with his family and a more regular lifestyle. Additionally, he stated at trial that the new position had opportunity for career advancement into an administrative position, which was a longtime goal of his and where he could utilize his education in healthcare management administration.
The trial court noted Sam's slight change in salary as a result of his move to Lifecare, but it also considered Sam's stated reasons for the change, expressing the finding that Sam had not taken a lowerpaying job to voluntarily under-employ himself. We also observe that the figure utilized by the trial court for Sam's monthly salary of $3,120.00 per month was a figure Christine submitted to the trial court to assist its calculation of Sam's child support obligation. Therefore, we cannot say that the trial court committed manifest error in using the amount of $3,120.00 per month as the basis for calculating Sam's child support obligation.

Deviation from the child support guidelines
Based on that figure attributable to Sam's monthly income, the trial court went on to determine that Sam's portion of the monthly support obligation should be $630.66. In its reasons for judgment, the trial court noted particular facts and considerations, and taking these into account, it deviated from the statutorily mandated amount of $630.66 to $525.00 per month. Christine maintains that this deviation was in error because there was no evidence presented to support such a deviation.
The child support guidelines establish a rebuttable presumption of the amount of child support that is proper. See, R.S. 9:315.1(A); Havener, supra at 539. If the court finds that the application of the guidelines would not be in the best interest of the child or would be inequitable to the parties, it may deviate from the guidelines. La. R.S. 9:315.1(B); Lehr v. Lehr, 31,181 (La.App.2d Cir.10/28/98), 720 So.2d 412, 414; Vickers v. Wellbrink, 605 So.2d 694 (La.App. 2d Cir.1992).
La. R.S. 9:315.1(C) provides an illustrative list of factors which may be considered by a court in determining whether to deviate from the guidelines. Reasons for deviation must be stated in the record, and they may include, inter alia, "Any other consideration which would make application of the guidelines not in the best interest of the child or children or inequitable to the parties." La. R.S. 9:315.1(C)(7). The statute mandates that the court give oral or written reasons for the deviation and that these reasons be made a part of the record of the proceedings. La. R.S. 9:315.1(B); Lehr, supra at 414; Vickers, supra at 696; Montgomery v. Waller, 571 So.2d 765 (La.App. 2d Cir. 1990). When a trial court decides deviation is appropriate, it should fully explain what the support would be if it were not deviating, why it is deviating, and how much is being allowed for each factor of deviation. Lehr, supra at 414; Vickers, supra at 696.
In addition to the considerations for deviation outlined in La. R.S. 9:315.1(C), the trial court has discretion to adjust a parent's child support obligation *194 pursuant to La. R.S. 9:315.8(E).[3]Guillot v. Munn, 99-2132 (La.03/24/00), 756 So.2d 290.[4]
Generally, the trial court is vested with much discretion in fixing support, and its reasonable determinations will not be disturbed unless there is a clear abuse of discretion. Havener, supra, citing, Gould, supra; Settle v. Settle, 25,643 (La.App.2d Cir.03/30/94), 635 So.2d 456, writ denied, 94-1340 (La.09/16/94), 642 So.2d 194. Deviations by the trial court from the guidelines shall not be disturbed in the absence of manifest error. La. R.S. 9:315.12.1.
Here, in making the deviation from $630.66 to $525.00, the trial court considered three factors. First, it recognized Sam's argument that he should be given credit for the amount of time Josh spends with him. Second, it noted the financial assistance Christine received from her grandfather who resided with her family. Finally, the trial court pointed to the recent addition to Sam's family of his newborn child. It also recognized that a substantial lowering of Sam's child support obligation would result in a hardship as to Christine's ability to care for Josh.
Any deviation from the guidelines as a result of Sam's new baby cannot be considered in this case. Although La. R.S. 9:315.1(C)(2) would allow a deviation for the legal obligation to support dependents who are not the subject of the action, such a consideration must be supported by an evidentiary basis. Guillot, 676 So.2d at 86. In this case, no evidence was introduced as to the expenses incurred in supporting the child born to Sam's subsequent marriage, nor the extent to which his present wife contributes to the support of that child. Therefore, we will not consider Sam's child of his present marriage as a factor for deviating from the child support guidelines.
However, the trial court additionally noted Sam's argument that he should be given credit for the amount of time Josh spends with him during the year, which is a statutorily imposed consideration for adjustment to child support. The Louisiana Supreme Court, in Guillot II, gives us guidance on the application of La. R.S. 9:315.8(E). The Guillot II court recognized that pursuant to La. R.S. 9:315.8(E), the court has discretion in determining whether to allow an adjustment to child support in shared custody or extraordinary visitation situations which is separate from the considerations allowed under La. R.S. 9:315.1(C).
Guillot II provides a three-part test to assist in considering whether to deviate from the guidelines. First, the court must determine whether the visitation is in fact extraordinary. Pursuant to the visitation schedule set by the trial court, Sam will have physical custody of Josh approximately 167 days per year, which number might fluctuate slightly depending on the school holiday schedule and any overlap between Sam's regular visitation and the holiday visitation. This schedule results in Sam having Josh 46 percent of the time. Although Guillot II does not set out a "bright line rule as to what constitutes extraordinary visitation as opposed to `typical' visitation," it would appear clear that visitation approaching almost 50 percent would be as close as a parent could get without being the domiciliary parent. We therefore consider Sam's visitation schedule with Josh extraordinary, *195 satisfying the first prong of the Guillot II test.
The second factor under the Guillot II test is "whether the extra time spent with the non-domiciliary parent results in a greater financial burden on that parent and in a concomitant lesser financial burden on the custodial parent." Id. at 300. Logically, the extended amount of time that Josh spends in Sam's home would result in a greater "financial burden" on Sam, while at the same time decreasing the "financial burden" on Christine. One example which is reflected in the record is that during the time Sam has physical custody of Josh, he transports him to and from baseball practice which Christine also does when she has physical custody of Josh. Obviously, this results in a "financial burden" for Sam in additional expense for this task, and it likewise decreases the "financial burden" on Christine in the decreased expense. Another obvious "financial burden" to Sam during the extended amount of time Josh spends with him would be the cost of his food and other ancillary costs of living that are incurred on a day-to-day basis on Josh's behalf. Therefore, we conclude that the second Guillot II factor is met in this case.
Finally, the third prong set out in Guillot II is the determination by the trial court "that the application of the guidelines in the particular case under consideration would not be in the best interest of the child or would be inequitable to the parties." Id. at 300. We note here that the adjustment in the child support from $630.66 to $525.00 made by the trial court is a relatively slight adjustment considering the extraordinary amount of time Josh spends with Sam.[5] The record also reflects, and the trial court acknowledged, that Christine receives financial assistance from her grandfather who resides with her family in a home she inherited. As a result, she has no mortgage note payment, although she has some expenses attributable to the remodeling of the home. Christine's grandfather pays the insurance, taxes and utilities on the house, as well as the car insurance on the vehicle Christine drives. Additionally, although Sam pays one-half of Josh's private school tuition, as factored into his monthly child support obligation, Christine's aunt pays the other half, representing another cost that Christine does not bear. Considering these financial benefits Christine receives, which are not factored into the percentage of her portion of Josh's child support, it is reasonable to conclude that a totally strict adherence to the child support guidelines would be somewhat inequitable to Sam, especially in light of the small deviation, percentage-wise, that the trial court made in this case. Thus, we conclude that the third Guillot II factor is satisfied.
Therefore, as guided by the supreme court in Guillot II, and pursuant to La. R.S. 9:315.8(E), the trial court's adjustment to Sam's child support obligation, which deviated slightly from the statutory guidelines, was not manifest error, and this assignment of error is rejected.

Retroactivity of Child Support Award
Although Christine's rule to increase child support was filed on January 9, 2000, the trial court made the order for the increased child support amount effective April 1, 2000. Christine argues that such an order was in error because there was no showing of good cause to justify not applying the award retroactively to the date of judicial demand.
Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand. La. R.S. 9:315.21; Welborne v. Welborne, 29,479 (La.App.2d Cir.05/07/97), 694 So.2d 578, writ denied, 97-1800 *196 (La.10/13/97), 703 So.2d 621 and, writ denied, 97-1850 (La.10/13/97), 703 So.2d 623. However, in the event that the court finds good cause for not making the award retroactive to the date of judicial demand, it may fix the date on which the award shall commence. See, La. R.S. 9:315.21(E). A trial judge is not required to assign reasons justifying a finding of good cause to make an award not retroactive to filing. Langley v. Langley, 96-0414 (La.App. 4th Cir.09/18/96), 681 So.2d 25. Moreover, as already noted herein, the trial court is vested with much discretion in fixing support, and its reasonable determinations will not be disturbed unless there is a clear abuse of discretion. Havener, supra; Gould, supra.
The trial court did not assign reasons for fixing a date which was three months past the date of Christine's filing on January 9th. However, the record reflects that for years before the trial, Sam had been making voluntary child support payments which were significantly more than the amount stated in the original decree. With that consideration, we find that there was no abuse of discretion by the trial court in fixing a date in lieu of the date of judicial demand, which date was only three months after the date of judicial demand.

Immediate Income Assignment Order

(Assignment of Error No. 6)
The trial court's judgment did not include as part of the order an immediate income assignment, which Christine argues was in error absent any showing of good cause by Sam.
Pursuant to La. R.S. 9:303, an income assignment order shall be included in a child support order unless the trial court finds good cause not to so require. See, La. 9:303(A). By its explicit provisions, the statute provides that the court does not have to require an immediate income assignment if good cause is shown. See, La. R.S. 9:303(B)(2). We conclude that the absence of any evidence in the record indicating that Sam is likely to become delinquent constitutes good cause. See, La. R.S. 9:303(B)(2)(c). In fact, the record reflects, via the testimony of both parties, that Sam had been historically conscientious in his monetary support of Josh. Therefore, we decline to include an income assignment as part of the support order and conclude that this assignment of error lacks merit. See, Warlick, supra.

Tax Dependency Deduction

(Assignment of Error No. 7)
Included in the joint custody plan was the trial court's provision that Sam and Christine would alternate years in which they could claim Josh as a dependent on their respective income tax returns. The trial court did not articulate any reasons for such an arrangement. Christine claims that the trial court erred in not allowing her the dependency exemption for Josh every year on all federal and state income tax returns because Sam failed to show that he would be substantially benefitted without significant harm to her. See, La. R.S. 9:315.13(B)(1)(b).
We believe the record supports the plan ordered by the trial court for Sam and Christine to alternate years in taking the tax deduction on Josh. First, the record does not reflect that there were any arrearages owed by Sam to Christine. See, La. R.S. 9:315.13(B)(1)(a). Second, the evidence presented at trial tends to indicate that Sam would be substantially benefitted (at least every other year) by the right to take the tax deduction without significantly harming Christine. Any harm to Christine is obviously halved, as she was awarded the tax deduction on alternating years. Primarily, we note that a vast majority of the child support obligation is attributable to Sam, and even after the trial court's adjustment, Sam's child support obligation is over twice Christine's. Christine argues that if Sam is allowed to claim the two children of his current wife who live with them, then another exemption could hardly be to his substantial benefit. However, there is no evidence in the record to support *197 that argument. Additionally, Christine's current husband has two children from previous marriages, and they could have the deduction for one of the children whose mother is deceased. But likewise, there is no evidence of that fact. We also point to Sam's federal tax returns in evidence and observe that in 1997 Sam claimed Josh as a dependent on his federal income tax return; however, he did not do so in 1998. It is unknown if Christine took the deduction in 1998, but it is apparent from the evidence that Sam did not.
Based on the record, it would appear that the decision to alternate the tax deduction between the parties would serve to significantly benefit Sam who has another child of his own to support in addition to the substantial portion of Josh's child support, while not substantially harming Christine. We cannot conclude that the trial court was manifestly erroneous in allowing Sam the dependent tax deduction on alternating years.

Continuing Obligation of Support

(Assignment of Error No. 8)
Finally, as Christine's last assignment of error, she maintains that the trial court erred by including in the joint custody plan the order that Sam's child support obligation for Josh would terminate on his eighteenth birthday. She relies on La. R.S. 9:315.22(C) which states as follows:
An award of child support continues with respect to any unmarried child who attains the age of majority, or to a child who is emancipated relieving the child of the disabilities attached to minority, as long as the child is a full-time student in good standing in a secondary school, has not attained the age of nineteen, and is dependent upon either parent. Either the primary domiciliary parent or the major or emancipated child is the proper party to enforce an award of child support pursuant to this Subsection. (Emphasis added).
This court previously addressed the issue of the support obligation for a major child in Savage v. Savage, 589 So.2d 95 (La.App. 2d Cir.1991); however, prior to January 1, 1994 (when Savage, supra was decided) the obligation to support was imposed by La. R.S. 9:309(C), which stated as follows:
An order or judgment of child support may continue with respect to any unmarried child who attains the age of majority as long as the child is a full-time student in a secondary school, has not attained the age of nineteen, and is dependent upon either parent. The major child shall be the proper party to enforce an order or judgment of child support which is continued beyond the age of majority pursuant to this Subsection. (Emphasis added).
We determined in Savage, supra that the purpose of La. R.S. 9:309(C) was to create an exception to the general rule of automatic termination of child support at the child's majority, and that the legislature intended for the child to affirmatively invoke the right to continued child support by establishing the eligibility "C" criteria through a judicial proceeding. Id. at 98. Thus, under Savage, supra, the continuation of child support past a child's majority was not automatic.
Since that opinion and the enactment of La. R.S. 9:315.22, which served to amend the provisions of the former La. R.S. 9:309, we recognize three cases by the First, Fourth and Fifth Circuits which have concluded that under the new subpart C of the statute, the obligation of child support "continues" past the age of majority, making the continuation automatic, provided the child meets the other criteria of the statute. See, Authement v. Authement, 96-1289 (La.App. 1st Cir.05/09/97), 694 So.2d 1129; Pilet v. Hartmann, 96-1091 (La.App. 4th Cir.11/27/96), 684 So.2d 557; Freeman v. Freeman, 95-179 (La.App. 5th Cir.07/25/95), 659 So.2d 826.
Therefore, considering the enactment of La. R.S. 9:315.22, serving to amend the previous La. R.S. 9:309, and the *198 cited cases, Savage, supra is no longer applicable and we conclude that an award of child support continues past the age of eighteen, making this continuation automatic, provided the child meets the requirements of the statute. As it relates to the case at hand, the joint custody order which was filed with the trial court's judgment stated that Sam's child support obligation would continue until "further orders of this Court or until the child reaches the age of 18." Clearly, the joint custody order improperly and automatically terminates Sam's child support payments when Josh reaches the age of eighteen. Considering the statutory mandate of La. R.S. 9:315.22(C), we amend the joint custody plan and strike any reference to the automatic termination of child support upon Josh's eighteenth birthday.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment below is affirmed, as amended, and costs are assessed to Christine.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] La. C.C. art. 134 sets out considerations for determining a child's best interest, which the trial court considered in this matter. Paramount in any determination of child custody is the best interest of the child. Crowson v. Crowson, 32,314 (La.App.2d Cir.09/22/99), 742 So.2d 107, 109, citing, La. C.C. art. 131; Evans v. Lungrin, 97-0541 (La.02/06/98), 708 So.2d 731; Oglesby v. Oglesby, 25,974 (La. App.2d Cir.08/17/94), 641 So.2d 1027.
[2] La. C.C. art. 132 states, in pertinent part, as follows:

In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.
Moreover, Comment-1993(b) to art. 132 notes that the latter provision is intended to strengthen the preference for joint custody.
[3] La. R.S. 9:315.8(E) states as follows:

In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time. The court shall include in such consideration the continuing expenses of the domiciliary party.
[4] This case has an extensive history in the Louisiana court system, and, in fact, was considered previously by the Louisiana Supreme Court on a separate issue, which is also cited herein. See, Guillot v. Munn, 96-0620 (La.06/21/96), 676 So.2d 86. To avoid confusion, the March 2000 decision will be referred to herein as Guillot II.
[5] In Guillot II, the court reversed a judgment allowing a 30 percent decrease in child support where the two children spent only 37 percent of the time with the father. The adjustment in this case for one child who spends approximately 46 percent of the time with Sam is approximately 17 percent.